### RICHARD E. NEWCOMB, Judge, &c. *vs.* HORACE WILLIAMS & others.

A testator appointed A. & B. his executors, and gave to his nephews all his property that should remain after payment of his debts, &c.: He also appointed B. trustee of said remaining property, empowering him to take possession thereof, and directing him to invest it on good security on interest, until he should have occasion to make payment according to the further provisions of the will, viz. to pay it to the testator's nephews, in equal shares, as they should respectively come of age: A. & B. rendered an administration account, and the balance was retained in the sole possession of B., who gave no bond, as trustee: No further administration account was rendered by A. & B.: B. rendered a separate account, and a decree was thereupon passed that he should pay the balance thereof to the testator's nephews, according to the directions of the will; but B. failed to perform this decree. *Held*, in a suit on the bond given by A. & B., as executors, that they were jointly answerable for the testator's property, and that they and their sureties were liable for the amount of the distributive shares of the testator's nephews.

Under Rev. Sts. *c.* 70, a legatee cannot put in suit, for his own benefit, the executor's administration bond, and have execution awarded for his own use.

In all cases of suits on administration bonds, except those mentioned in Rev. Sts. *c.* 70, §§ 3, 4, 5, execution is to be awarded, without expressing that it is for the use of any particular person; and all money received on any execution so awarded is to be paid, as directed by § 11, viz. to the co-executor or co-administrator, if there be any, or to whoever shall then be the rightful executor or administrator; and the money so paid will be assets, in his hands, to be administered according to law.

When an executor, who is unfit to be such, is sued on his administration bond, in a case in which execution is to issue without expressing that it is for the use of any particular person, the judge of probate should remove him, and appoint an administrator *de bonis non*, with the will annexed, who will be entitled to the money that may be received on such execution.

DEBT on a probate bond in the penal sum of $3000, dated December 18th 1827, executed by Amos Russell and Horace

Williams, as principals, and Russell Cooley and Aaron Arms, as sureties. Writ dated August 27th 1844. On the writ was this indorsement: " This action is brought, by leave of judge of probate, for benefit of David Crafts and Roswell Crafts, and other legatees of late Roswell Crafts."

Said Amos and Horace were executors of the last will of Roswell Crafts, and the condition of the bond was such as is now required of executors by the Rev. Sts. *c.* 63, § 2, except that, as to the return of an inventory, no mention was made of the testator's *real estate.*

The following breaches of the condition of the bond were assigned by the plaintiff: "Although said Amos and Horace were duly cited, in March 1843, to render an account of their a.ministration, under oath, yet the said Horace has neglected and refused so to do. And although goods and chattels, rights and credits, of the said Roswell, to a large amount," to wit, &c. " have come into the hands and possession of the said Amos and Horace, yet they have not kept the same, but have suffered them to be entirely wasted and consumed. And whereas the will of said Roswell, among other things, provided that his estate, after paying debts and charges, should be kept by the said Amos, in trust for the benefit of certain persons therein named, and the said Amos, on the death of said Roswell, declined the acceptance of said trust, or to receive or retain said estate, as such trustee, yet the said Amos and Horace, well knowing the premises, and that the will contained no provision for filling the vacancy thus created, did not apply for or cause the appointment of any trustee to fill the vacancy thus created. And that, on the 27th day of August 1844, at a court of probate then held at Greenfield, by the plaintiff, a decree was passed, as follows: 'In the matter of the separate account of Amos Russell, as one of the executors of the last will of Roswell Crafts, it is decreed that the said account, as corrected, be allowed ; and it appears that a balance remains in the hand of said executor, of $1119·11 ; and it is further ordered that the shares of David Crafts and Roswell Crafts, two of the legatees under said will, be distributed and paid out to them, according to the provisions of the will of the

testator:' That on the same day the said David Crafts and Roswell Crafts, legatees under said will, being of the age of twenty one years, and of good moral character, became entitled to demand and receive of said Amos and Horace their respective shares aforesaid, and thereafterwards, on the same day, demanded of the said Amos the distributive share so due to each of them, and the said Amos neglected and refused to pay the same."

The case was submitted to the court upon the following statement of facts : The last will of Roswell Crafts, made on the 7th of September 1827, was thus: "*First.* It is my will that all my just debts, and the charges of my funeral, be promptly paid out of my estate, by my executors hereinafter named and appointed. *Second.* I give and devise all my property, after my just debts and funeral charges are paid, in equal shares, to Josephus Crafts, Chester Crafts, jr., Roswell Crafts, 2d, and Albert Crafts, all sons of my brother Chester Crafts ; all of my said property, however, to be subject to the directions and dispositions hereafter given and made in this my last will. *Third.* I nominate, appoint and declare Amos Russell of Deerfield, to be my trustee of all my said property, except so much of the same as my executors will require to discharge my just debts and funeral expenses; hereby empowering him, immediately after my decease, to take full possession of the same. And it is my will that my said trustee shall keep all such moneys of mine, as he shall receive after my decease, at interest upon good security, until he shall have occasion to pay the same according to the following directions. *Fourth.* It is my will that my said trustee pay, at his discretion, to my honored mother, Roxilany Crafts, so much money, annually, as shall afford her a comfortable maintenance and support ; provided, however, that my said trustee shall not pay to my said mother more than seventy two dollars per year. *Fifth.* It is furthermore my will that my said trustee, after deducting the sum of twelve hundred dollars from the original amount of my property, (the interest of which sum being assigned, in part or wholly, for the use and support of my said mother, as heretofore provided,) shall pay equal shares

of the balance of the same, together with the interest which shall have accrued thereon, to the said Josephus Crafts, Chester, jr., David, Roswell, 2d, and Albert, upon their respectively arriving at the age of twenty one years, that is to say, during the life of my said mother; and after the decease of my said mother, it is my will that my said trustee shall pay to all such of the said Josephus, Chester, jr., David, Roswell, 2d, and Albert, as shall have arrived, at the time of her decease, at the age of twenty one years, equal shares of the said sum of twelve hundred dollars, together with the interest thereon that shall not have been appointed to the use of my said mother, and thereafterwards proceed to pay such of the said Josephus, Chester, jr., David, Roswell, 2d, and Albert, as shall thereafterwards arrive at the age of twenty one years, upon their arriving at that age, their equal shares of the above mentioned balance of money left after deducting, as aforesaid, and the interest thereon, together with the said sum of twelve hundred dollars, with so much of the interest on the last mentioned sum, as shall not have been appointed to the use of my said mother, as aforesaid.  Provided, however, that if the moral character and conduct of either or any of the said Josephus, Chester, jr., David, Roswell, 2d, and Albert, upon their respectively arriving at the age of twenty one years, shall not be good, then it is my will that my said trustee shall pay to such or any of them whose moral character and conduct shall not be good, if any, their respective shares, at the discretion of him my said trustee.   *Sixth.* I hereby nominate, constitute and appoint Amos Russell aforesaid and Horace Williams, both of Deerfield, to be my executors of this my last will and testament."

This will was duly proved and allowed on the 18th of December 1827, and the defendants, on that day, executed the bond declared on by the plaintiff.  The executors named in the will rendered to the plaintiff the first account of their administration, on the 14th of October 1828, in which they charged themselves with the personal estate of their testator as per inventory, and cash in the hands of Aaron Russell, one

of the executors, to the amount of $1833·01, and prayed allowance, for payments, &c. made by them, (including $37·25 paid to Roxilany Crafts, the testator's mother,) to the amount of $182·31 ; leaving a balance of $1650·70 against them ; which account was allowed and recorded.

The said Horace Williams, one of the executors, never had the possession, nor exercised any control, of any of the property of the testator ; but the management of said property was entirely by said Amos Russell, the other executor.

Said Russell never gave any bond, as trustee, nor did the plaintiff ever allow or fix any time for that purpose ; but the plaintiff did, at some time, ask him to give bond, and he replied that he would not. No measures were taken by any one to have a new or other trustee appointed. Said Russell is now insolvent, and has been for the last three years.

Early in the year 1843, the said Josephus Crafts, and the other nephews of said testator, mentioned in his will, petitioned the plaintiff to cite said executors to render a second account of their administration, and a citation was issued by the plaintiff accordingly. On the 14th of March 1843, said Horace Williams, one of said executors, appeared before the plaintiff, on said citation, and made answer thereto, that he rendered an account, jointly with said Amos Russell, on the 14th ot October 1828, of all the testator's property, in the hands of said Russell ; and that, after the rendition of that account, no part of said property came to said Williams's hands or possession, but that said property was in the hands and under the control of said Russell, as trustee, according to the intent of the testator's will ; and that said Russell had ever since held said property as guardian of the legatees under the will. Wherefore, said Williams prayed that a final discharge might be granted to him. The plaintiff, on the same day, passed an order that said Russell and Williams should render a second account on the 22d of May 1843. But this order was not obeyed by said Russell and Williams.

On the 27th of August 1844, said Russell rendered a separate account of his administration, which was allowed, and the

decree passed thereon which is set forth by the plaintiff in his last assignment of the breaches of the condition of said bond. And a demand was made on said Russell, before the commencement of this action, by the attorney of said legatees, for the payment of their distributive shares.

Only one of said legatees, viz. David Crafts, for whose use this action is brought, is twenty one years old ; and he is of good moral character.

If the court shall be of opinion, on these facts, that a decree of the court of probate, ordering said Amos Russell and Horace Williams, as joint executors, to pay to any one of the legatees his distributive share, would have been legal, then judgment shall be for the plaintiff for such amount, and in such mode, as the court shall order.

*Davis & Devens*, for the plaintiff. The executors are jointly answerable for the testator's property, until they show that it has passed from them, as such, to the trustee. This is not shown. The trustee declined the trust and refused to give bond. He therefore held the property as executor, jointly with his co-executor. *Hall* v. *Cushing*, 9 Pick. 395. *Pratt* v. *Northam*, 5 Mason, 95. The bond given by the executors covers the trustee's liability. *Dorr* v. *Wainwright*, 13 Pick. 331, 332. Co-executors are liable on their bond, as joint obligors, for the acts of each other to which they assent. Bac. Ab. Executors & Administrators, D. 2. *Brotten* v. *Bateman*, 2 Dev. Eq. Rep. 115. *Clark* v. *Clark*, 8 Paige, 160. *Brazier* v. *Clark*, 5 Pick. 96. *Towne* v. *Ammidown*, 20 Pick. 540 *Clarke* v. *State*, 6 Gill & Johns. 288. *Babcock* v. *Hubbard*, 2 Connect. 539. *Anderson* v. *Miller*, 6 J. J. Marsh. 571. *Morrow* v. *Peyton*, 8 Leigh, 54. *Brice* v. *Stokes*, 11 Ves. 319. *Booth* v. *Booth*, 1 Beavan, 125. 2 Stephens Nisi Prius, 1864. 2 Story on Eq. §§ 1280, 1284.

*Aiken*, for Williams and the sureties. The will is to be examined, in order to ascertain what the defendants' bond covers, and what the joint executors were bound to do. The will gives the possession and custody of the property to Russell, as trustee, and prohibits the executors from managing it.

The legal interest in the property was vested in Russell, and he was to make payments, at his discretion, to the testator's mother, and to withhold payment from any legatee whose moral character should not be good. The only power given to the executors was, to take property sufficient to pay debts and charges, and pay them. This was to be done by the executors jointly. All other acts were to be done by Russell, as trustee, or by a successor in the trust, to be appointed by the judge of probate, according to the law existing when the will was proved.

Sureties are not liable for acts of executors which they had no power to do jointly. *Towne* v. *Ammidown*, 20 Pick. 535. Nor are the liabilities of these sureties varied by the executors having rendered one joint account, in ignorance of their rights and duties.

In cases of *implied* trusts, executors are liable as executors, because no other person has power to act as trustee, and the will is carried into effect by making the administration bond cover the property. But in the will now before the court, the trust is *express.* And in *Dorr* v. *Wainwright*, 13 Pick. 328, the implication is strong, if not irresistible, that an executor's bond does not cover trust property, when a trustee is appointed. In *Hall* v. *Cushing*, 9 Pick. 395, the trust was an implied one. Some of the *dicta* in that case seem to favor this plaintiff; but they were *obiter.* In *Wyman* v. *Hubbard*, 13 Mass. 234, which was also a case of implied trust, Parker, C. J. said, the sureties of the executors were not bound for their faithfulness as trustees.

By *St.* 1817, *c.* 190, §§ 37, 38, 40, which was in force when this bond was given, provision was made for new trustees, in cases of an express trust, and for the vesting of the trust property in them. Sect. 40 seems to have been framed on the supposition that an executor's bond did not cover express trusts. If it did, there was no more occasion for legislation than in cases of implied trusts, where such bond does cover the trust property

SHAW, C. J. This is an action of debt on a probate bond.

brought in the name and by the authority of the judge of probate, upon the application of the nephews and legatees of Roswell Crafts deceased, against Amos Russell and Horace Williams, the executors of said Roswell's will, as principals, and Russell Cooley and Aaron Arms, as sureties on said bond. The case comes before the court upon an agreed statement of facts ; and the question is, whether, to account for the estate of the testator, and pay over the same, is a joint duty of both executors, for the performance of which they and their sureties, by force of the probate bond, are responsible ; or whether under the circumstances, that duty has devolved on Amos Russell alone, as trustee, so that his co-executor and the sureties are discharged. The bond is in the usual form of an executor's bond, conditioned to return an inventory, render an account, and administer the estate according to the will. The executors returned an inventory and rendered a joint account, charging themselves with the personal property of the testator.

It appears to us, very clearly, that by these proceedings, and by operation of law, the executors became responsible for the personal property of their testator, and that they must remain thus responsible until some legal discharge is shown. The counsel for Williams, the co-executor, maintains, in behalf of him and the sureties, that they are so discharged by the fact agreed, namely, that the property went into the hands of Amos Russell ; that he, as a trustee specially appointed by the will, was the proper person to take it and hold it, and that the executors are thereby exonerated.

The will, after giving the whole of the residue of the property to the five nephews, directs that this shall be subject to particular directions which he gives. He then goes on to appoint Amos Russell, one of the executors, a trustee of all his property, except so much as the executors will require to pay debts and expenses ; empowering said Russell, immediately after the testator's decease, to take full possession of the same, and keep it at interest on security ; to apply the income of a part to the support of his mother, and, subject to that appropriation, to pay over the residue to said nephews, in

equal shares, as they shall respectively arrive at twenty one years of age.

Now it is argued, that as the testator had the *jus disponendi*, and did direct the property, immediately after his decease, to go into the exclusive possession of the trustee, it was rightly disposed of, according to the will, and the executors, as such, had no further control over it, and were no longer responsible for it. This argument is plausible; but we think it is fallacious, and founded on a misconception of the powers of the testator, and the relative rights and duties of an executor and a trustee. It is not legally correct, to say that a testator has the *jus disponendi* of his property; it is true only *sub modo*. The executor, as such, is bound to administer the whole estate, as well that not given by the will as that embraced in it. *Hays v. Jackson*, 6 Mass. 149. The first claim on the estate is that of creditors; and it cannot be known, until an inventory is returned and an account settled, whether the whole estate will not be necessary for the payment of debts. So children or their issue, who have no share given them, and posthumous children, are entitled to the same distributive shares which they would be entitled to if the estate were intestate. Rev. Sts. *c.* 62, § 21. These claims are paramount to those of legatees, and no disposing power of the testator can defeat them. To meet these claims, and enable the executors to perform the trust which the law devolves upon them, the whole property must, in the first instance, come to them, and be disposed of, in an orderly course of administration, which the testator cannot control. For this purpose, it is an established rule of law, that all the personal property of the testator vests in the executors, for some purposes, before probate of the will; but to all intents and purposes, upon its probate. This they take, not merely as donees, by force of the gift, as *inter vivos*, but by operation of the rules of law controlling, regulating and giving effect to wills. A trustee, therefore, who is but a legatee, can take only through the executors. If a testator were to appoint no executor, or direct that the estate should go immediately into the hands of legatees, or of

45 *

one or more trustees, for particular purposes, such direction would be nugatory and void ; and it being a will in which no executor is appointed, it would be the duty of the judge of probate to appoint an administrator with the will annexed, who would have all the powers of an executor, and in whom all the personal property would vest.   Rev. Sts. *c.* 63, § 1.

Being of opinion that, by this will and the acts done under it, the executors became jointly possessed of the personal property, and responsible for it, we are then to consider, whether the taking of it, by one of them, who was also sole trustee, under the circumstances stated, discharges the executors.

When the executors and the trustees are different persons, there is no difficulty; nothing but an actual payment to the trustees, by the executors, will discharge them.   So if the trust is cast upon them as executors, the execution of such trust is a duty superadded to their official duties as executors, and until they qualify themselves, and assume to act in their separate capacity, as trustees, the bond to perform their duties, as executors, binds themselves and their sureties to the execution of such trust.   *Hall* v. *Cushing,* 9 Pick. 395.   *Dorr* v. *Wainwright,* 13 Pick. 328.   *Towne* v. *Ammidown,* 20 Pick. 535. What would amount to such change of capacity, when the same persons are executors and trustees, so as to exonerate the sureties on the executorship bond, would depend on circumstances.   If, by the constitution of the trust, they were exempted from giving bonds, as they may be, (Rev. Sts. *c.* 69, § 2,) it would probably be held sufficient — as no actual payment can be made to one's self — to show, by any authoritative and notorious act, that they had elected to act in the capacity of trustees ; as for instance, if they claim a credit in their executorship account, filed in the probate office, for a sum, held by themselves as trustees, and also file an inventory or account, charging themselves with the like sum as trustees.   9 Pick. *ubi sup.*   But, when a bond to the judge of probate is required, such transmutation of the property cannot be complete, so as to discharge the executors, until such

bond has been given. Rev. Sts. *c.* 69, § 1. And we think the same rule applies when one of the executors is himself trustee. Such charge in the one capacity, and claim to be discharged in the other, would avail, if no bond were required. But it is a general rule, applicable to this in common with other cases, that executors must see, at their peril, that they pay legacies to persons legally authorized to receive them, anc that a literal compliance with the directions of a will is not in all cases, sufficient. Suppose legacies to persons named who are found to be infants, persons under guardianship, as *non compos*, or spendthrift; a payment to the infant, *non compos*, or spendthrift, would be no valid discharge. So if a legacy be to a man and his heirs, and the legatee die, after the testator, and before payment; a payment to the heir would not be legal; it must be to the personal representative. So we think payment to one named as trustee, but not qualified to act as such, would be no valid payment. He may have declined or resigned the trust, or neglected, on notice, to give bond; by which he shall be considered as having declined; or he may have been removed. Rev. Sts. *c.* 69, §§ 4, 7. In any of these cases, a payment to the trustee named in the will would be a payment by the executors in their own wrong, and no valid discharge. What would be sufficient proof of the qualification of a trustee, is not now in question; probably a commission or certificate from the probate court would be a sufficient warrant. But, in the present case, the trustee could not be qualified without giving bond; being within none of the exemptions in Rev. Sts. *c.* 69, §§ 2, 3; and being himself one of the joint executors, his knowledge of the fact was constructive notice to his co-executor. Besides; even if it were a case where the trustee was exempted by law from giving bond, the result would be the same; because here was no authoritative and notorious act done by the executors, indicating an intent to discharge themselves as such, by placing the property in charge of the trustee; and no similar act on the part of the trustee named, indicating an intent to assume such trust.

The court are therefore of opinion, that the executors are jointly liable for the balance of the personal property of the testator, which, it appears by the accounts, has come to their hands, and not been paid over.

We think the judgment, in the present case, requires some particular attention ; the more so, as we think the revised statutes have introduced some changes of the law in this re spect, and at least have given much more precision and exactness to the law and practice in regard to the judgment and other proceedings, in suits on probate bonds.

By the former statutes, certain creditors and distributees were authorized to bring suit, for their own benefit, on the probate bond, in which, after a judgment for the whole penalty for the judge of probate, such persons had an award of execution to their own use.  In other cases, judgment was rendered generally for the judge of probate, for the benefit of all concerned.  It might be doubtful, perhaps, upon the law as it stood, whether a legatee, whose right was not ascertained by a judgment, could have a suit on the bond to his own use. In some cases, it was implied, from the decisions of the court, that such suit could be maintained, after demand of the executor and refusal of payment.   *Paine* v. *Gill*, 13 Mass. 365. *Prescott* v. *Parker*, 14 Mass. 428.   But the directions of the Rev. Sts. *c.* 70, are clear and explicit, and are fully explained by the report of the commissioners for making that revision There are three cases, and three only, in which a person may sue the probate bond for his own benefit, without application to the judge, making a special indorsement thereof on the writ, and have a special award of execution to his own use. 1. A creditor of a solvent estate, who has a judgment against the executor.   2. A creditor of an insolvent estate, for his share, after a decree of distribution.   3. A person next of kin and distributee of an intestate estate, after a decree of distri bution in his favor.   In each case, the party so suing must have demanded the amount of the executor or administrator, and he must have refused or neglected to pay.   Rev. Sts. *c.* 70, §§ 3, 4, 5, 10.   In all these cases, it will be perceived

that the right of the claimant is liquidated and ascertained by matter of record, amounting to a conclusive judgment between the parties, and that nothing remains but payment. These cases exclude that of a legacy. And why should it not be excluded? Though it be a pecuniary legacy, and a sum certain, yet the executor may not be bound to pay it. There may be no assets for its payment, and so it must fail; or no assets to pay all legacies of the same class, and so it must abate in proportion. Besides; the legatee, like all other claimants, has his remedy by action, and, if there be no defence, must have judgment for his legacy.

But to proceed: The Rev. Sts. *c.* 70, § 6, provide that when it shall appear to the judge of probate, on the representation of any person interested in the estate of a deceased person, that the executor or administrator has failed to perform his duty, in any other particular than that of failing to pay a creditor or next of kin having a judgment or decree, he "may authorize any creditor, next of kin, *legatee,* or other person aggrieved by such maladministration, to bring an action on the bond." Here, it will be perceived, legatees are enumerated among those who have claims on the estate, and not those who have a right to sue the bond for their own benefit.

It is also to be noted, that in case of a suit brought generally, in the name of the judge of probate, the writ is to be indorsed by those at whose request it is brought; and in case of costs for the defendant, judgment shall be entered for such costs against such indorser, and not against the judge of probate; which, it is believed, is a change of the former law. Rev. Sts. *c.* 70, § 7.

But the most material provision is in the third and fourth subdivisions of § 10, namely, that in case of such suit for the general benefit, execution shall be awarded in the name of the plaintiff, the judge of probate, without expressing that it is for the use of any other person. Sect. 11 provides that "all moneys received on any execution issued as aforesaid, (unless the execution be awarded for the use of a creditor or person next of kin, as provided for in the first and second subdi-

visions of the preceding section,) shall be paid over to the co-executor or co-administrator, if there be any, or to whoever shall then be the rightful executor or administrator, and shall be assets in his hands, to be administered according to law " This, perhaps, requires a little elucidation ; but it is fully explained by the commissioners, in their report, in the notes on *c.* 70. Generally, it is true, maladministration which constitutes a breach of the bond will disqualify the same administrator from holding his office and proceeding in the settlement of the estate. But as separate bonds may have been given, (Rev. Sts. *c.* 70, § 2,) there may be a co-executor or co-administrator not implicated, who may fitly take the assets and settle the estate. And it may be that the breach of the bond may be of such a nature as not to implicate the integrity of the executor, or his fitness to administer the estate, but on which a suit was brought to settle some question of right ; in which case, if he will submit to the judgment, and charge himself with the amount, the purpose of the suit will be accomplished, and the assets may be again committed to him. But, in general, the refusal to account, the waste of the estate, or other maladministration, which constitutes the breach of the bond, and which will be disclosed in the suit, resulting in a judgment against the executor or administrator, on his bond, will show that he has become evidently unsuitable for the further discharge of the trust, and it will be the duty, as it is within the power, of the judge of probate, to remove him, and appoint an administrator *de bonis non*, and with the will annexed if it be the case of an executor removed. Rev. Sts. *c.* 63, § 7, and *c.* 68, § 25. Thus there must, in every case, be an administrator, duly qualified, and above exception, to take the proceeds of the judgment — either directly from the debtors, if paid voluntarily, or from the officer charged with the service of the execution — to be administered as assets.

Taken together, these provisions constitute a plain, practical and harmonious system, easy to be applied, in which each direction conforms to and harmonizes with every other. The judge of probate, who, as the obligee in the bond, is a

necessary party, is yet an official and formal party only. He is in no case subject to costs. He can in no case receive the money himself, and in no case can he be required, or has he any authority, to direct the appropriation or distribution of the proceeds of such judgment. On the contrary, they are to be paid to a rightful administrator, and shall be assets in his hands, to be administered according to law. The law, then, directs the appropriation, and adapts it to every variety of claim which can exist. Creditors, legatees, next of kin, persons having derivative or conditional claims, under trusts or otherwise, will take these assets, under a due course of administration, according to their respective legal priorities, and in their due shares and proportions.

In this case, if it has not been already done, the judge of probate will probably think it expedient to remove the executors, and appoint an administrator *de bonis non*, with the will annexed, to whom the proceeds of this judgment will be committed. After the payment of debts, if any, and expenses, he will pay the residue to a trustee, to hold under the trusts expressed in the will, namely, to keep the amount at interest, on good security, to appropriate a portion of the income to the support of the mother, if living, and, subject to that appropriation, to pay over the amount, in equal shares, to the five nephews, as they have already, or may hereafter, respectively, come of age. If the trustee named is a suitable person, and will give satisfactory bonds, we see not why he may not be that trustee, according to the appointment of the testator. But if, as is more probable, he shall fail to give such bond, when required, or shall be incapable of discharging the trust, or evidently unsuitable therefor, in the judgment of the judge of probate, then, after due notice to the trustee and all others interested, he will remove him, and appoint another in his stead. Rev. Sts. *c.* 69, §§ 4, 7.

But the only entry now to be made will be substantially as follows, to be put into due form : That the plaintiff, the judge of probate, have judgment for the sum of three thousand dollars, the penalty of the bond, and that execution be awarded

for said plaintiff, for part of said sum, to wit, for the sum of $     , and costs of suit, taxed at $

The sum, for which execution is to issue, is that for which the executors are liable, and is to be ascertained by a hearing in chancery, if not already adjusted.