Argued 23 December, 1902 ; decided 26 January, 1903.

## BRAND *v*. BAKER.

[71 Pac. 320.]

ATTACHMENT—EXECUTION—STATUTES.

1. It *seems* that under B. & C. Comp., Section 233, subd. 4, and Section 301, subd. 1, real property is levied upon under a writ of execution in the same manner that similar property is attached, and that no actual notice to the owner or occupant is now required.

POWER OF COURT TO VACATE ORDERS AFTER THE TERM.

2. A court's inherent power to vacate its orders or judgments continues only to the end of the term during which they are rendered; after that it can be done only pursuant to the statute.

VACATING JUDGMENT ORDER.

3. Under Section 103 of B. & C. Comp., providing that the court may at any time within a year after notice thereof relieve a party from a judgment or order taken against him through his mistake, inadvertence, surprise, or excusable neglect, a judgment debtor may not, more than a year after the entry of an order confirming an execution sale, be relieved therefrom simply because he did not know of it, where his attorney had information of all the facts, and his agents made no inquiry concerning the enforcement of the judgment, though they well knew that it had been rendered.

RATIFICATION OF ACTS OF AGENT—REDEMPTION.

4. A principal who has ratified the acts of his agent will not be heard to claim that the agent acted without authority : for example, after land sold on execution has been redeemed by an agent of the owner with his funds, the latter, while still retaining both the possession and the redemption certificates, cannot insist that the redemption was unauthorized.

From Multnomah: ARTHUR L. FRAZER, Judge.

This is an appeal from an order vacating a sale under a writ of execution. Plaintiff is a resident of Scotland, but owns real

estate in Portland. Macmaster & Birrell, of that city, are, and for many years have been, his agents, having the entire control and management of his property and business affairs therein. In 1899 they employed Miller Murdock, an attorney of this court, to commence an action in the name of their principal against the defendants for the use and occupation of real property belonging to him. Upon the trial of the action on February 6, 1900, an involuntary nonsuit was given against the plaintiff, and a judgment for $33 costs. On March 6th an execution was issued on the judgment, and placed in the hands of the sheriff for service, who, on the 16th, levied upon three lots in the City of Portland belonging to the plaintiff, of the probable value of $30,000, by making and filing with the county clerk the certificate provided for by Section 301, B. & C. Comp., and thereafter advertised them for sale in the manner provided by law. On April 28th, after offering them separately at public auction, and receiving no bids therefor, he sold them *en masse* to C. C. Palmer, the attorney for defendants, for $42.25; that being the highest and best bid offered therefor. On May 9th the sheriff reported the sale and proceedings under the writ, returning the execution fully satisfied. No objections having been made or filed to the confirmation of the sale, on January 24, 1901, about eight months after the sheriff's return had been filed, it was confirmed on motion of Palmer. On December 31, 1901, Murdock, on behalf of the plaintiff, and in pursuance of a previous notice, redeemed the property, and received from the sheriff a certificate of redemption. On January 24, 1902, the court, on its own motion, and without notice to the defendants or to the purchaser, made an order vacating and setting aside the confirmation of the sale because "inadvertently made," and that, "had all the facts and circumstances in connection with the sale been known * * at the time of said confirmation, the said order would not have been made."

On the 7th of the next month the plaintiff appeared by his attorneys, and moved the court to set aside and vacate the order of confirmation, and for leave to file objections to the sale and the confirmation thereof, on the ground that such order "was

entered through the inadvertence, mistake, and excusable neg-
lect of plaintiff." This motion was supported by the affidavits of
Macmaster and Birrell, stating, in substance, that they are the
sole and exclusive agents of the plaintiff, and have entire
charge and control of the management of his property and
affairs in Portland; that, acting as such agents, they employed
Miller Murdock, whom they believed, and had reason to believe,
to be a careful and capable attorney, to represent the plaintiff
in said action; that in all matters and things pertaining thereto
the plaintiff and affiants relied entirely upon Murdock to ad-
vise them and properly to attend to such matters; that Mur-
dock was not the regularly retained legal adviser of the plain-
tiff, but was employed for this particular action, and no other;
that, after the rendition of the judgment against the plaintiff
for costs, affiants frequently requested Murdock to advise them
of the amount of such judgment, in order that they, as agents
for the plaintiff, might pay it, and have it satisfied of record;
that Murdock from time to time advised them that he was ne-
gotiating with the defendant's attorney, Mr. Palmer, for the
settlement of the judgment, and that in due course the same
would be paid and satisfied; that, immediately after the recov-
ery of the judgment, plaintiff discharged Murdock, and paid
him in full for his services, except that he was authorized to ne-
gotiate with the defendants for the settlement or compromise
of the judgment for costs; that plaintiff employed other attor-
neys, who prosecuted the same cause of action to a successful
issue; that affiants are not able to state the reason why Mur-
dock concealed from them and the plaintiff the true state of
affairs with reference to such a levy and sale, unless it was
on account of having been unsuccessful in the action, and,
having incurred a large sum for expenses, he feared that he
would be criticised adversely for permitting the further ex-
pense of a levy and sale; that neither the plaintiff, nor the affi-
ants, as his agents, ever had any notice or knowledge that
execution had been issued on the judgment until the 15th day
of January, 1902, when they were so notified by Palmer, who
demanded of them an accounting for all the rents and profits

of the real property levied upon and sold from the day of sale until the 31st of December, 1901, the day of redemption; that prior to such notice, and on the 30th of December, 1901, they delivered to Murdock, who had appeared as attorney for the plaintiff in the action, the sum of $49.80, for the purpose, as they understood, of paying the judgment, but, without the knowledge of the plaintiff or of the affiants, and without authority to do so, he redeemed the property from the pretended sale; that all of the proceedings in the matter subsequent to the entry of judgment were had without any actual notice or knowledge on the part of the plaintiff, or of the affiants, as his agents, and that notice of the levy and sale was not communicated to them by Murdock; that the failure of the plaintiff to file objections to the confirmation of the sale within the time provided by law was due to the lack of any knowledge by or notice to him or his agents that the sale had occurred, and, if plaintiff or the affiants had had knowledge of the levy or sale, the plaintiff would have presented in due course his objections to the confirmation thereof; that, notwithstanding the fact that the affiants, as the sureties for Brand in the action brought by him against the defendants, had furnished and caused to be filed an undertaking for a writ of attachment, whereby they undertook and agreed to respond to any judgment that might be entered against the plaintiff and in favor of the defendants, they were not informed that an execution had been issued upon the judgment, and no demand was ever made upon them by the sheriff to pay the same; that Palmer was the attorney for the defendants in the action, and became the purchaser at the sale under the execution, and has since brought a suit against the affiants to collect from them the rents and profits upon the property from the day of the alleged sale and purchase by him to the day of redemption; that the amount of the rents and profits during such time would amount to about $3,000, which affiants have collected, and long since remitted to the plaintiff; that, unless the order of confirmation is set aside, and plaintiff is permitted to file objections thereto, great hardship will be imposed upon these affiants and upon the plaintiff, and that, in

the opinion of affiants, Murdock will be financially unable to respond in damages in case plaintiff should be compelled to pay Palmer the sum of $3,000 for the rents, issues, and profits of the property.

The defendants filed Palmer's affidavit in opposition to the motion, which shows that in the record of the action in which the judgment was recovered there is no suggestion that Macmaster & Birrell were plaintiff's agents, or that any one in Oregon represented him in reference to his property, except Murdock, who verified the pleadings on the ground that his client was not a resident of the state; that in the legal proceedings subsequently commenced by Brand against one of the defendants, and which were pending until January 10, 1901, Murdock acted as Brand's attorney, to the knowledge of Macmaster & Birrell; that Palmer called on Murdock on December 12, 1900, and requested him to settle up the matter, and Murdock said that he had known of the sale for some time; that later Murdock told him that Macmaster & Birrell desired to wait until they obtained certain moneys from the sheriff, and requested that until then no confirmation order be entered; that Palmer applied for the order of confirmation, when he ascertained that Murdock, on the 16th of January, had received money from the sheriff, but neglected to apply it on the judgment; that on March 14, 1901, Palmer again called on Murdock, and requested him to close up the matter, and Murdock said that he had notice that the order of confirmation had been entered; that some days later Murdock called on Palmer, and stated that the plaintiff was willing to pay in settlement the amount of the judgment, $33, and interest, which was refused; that thereafter, and on December 31, 1901, Murdock, acting for Brand, redeemed the property, and the sheriff issued and delivered to him a certificate of redemption; that a notice of the order of confirmation was published in the *Daily Official Abstract* of January 25, 1901, as a part of the proceedings of the circuit court for the day before, and that Macmaster & Birrell were subscribers for such paper, and it was delivered to them on the date of its publication.

Upon these affidavits the court, on February 12, 1902, made an order vacating and setting aside the order of January 24, 1901, confirming the sale, and granted leave to the plaintiff to file objections to such confirmation. On the same day plaintiff filed objections thereto, because: (1) It did not appear from the sheriff's return that any attempt was made by him to levy upon personal property before levying upon the real estate; (2) that the notice of sale was not given by publication in a newspaper of Multnomah County; (3) that the levy was grossly excessive, and disproportionate to the amount of the judgment upon which the writ was issued; (4) that at the time of the levy and sale the plaintiff was a naked trustee for the beneficial owner of the property; (5) that Palmer, the purchaser at the sale, had been paid the full amount of the original judgment, with accrued costs, and was, therefore, not an innocent purchaser. The affidavits of Macmaster & Birrell were filed in support of these objections, stating: (1) That the notice of sale was published in the *Hebrew News,* published in Portland, and that such paper was not a newspaper of general circulation; (2) that the property levied upon by the sheriff consisted of three lots in the City of Portland, each worth at least the sum of $10,000; (3) that the plaintiff is an official of the British Linen Company Bank, and holds the title to the property in trust for the bank; (4) that the defendants did not pursue their remedy for the collection of the judgment promptly, but waited almost a year after the sale before moving for the confirmation thereof. The defendants moved to strike the objections to the confirmation of the sale and all affidavits and papers in support thereof from the files, on the ground that they were not filed within the time allowed by law, and the order of the court permitting them to be filed was null and void for want of jurisdiction. This motion was overruled, and on February 17, 1902, all the objections to the confirmation of the sale, except the second, were sustained by the court, the sale was vacated, and an order entered that no further proceedings be had upon the execution. From this order the defendants appeal.        REVERSED.

For appellant there was a brief and an oral argument by
*Mr. Clinton C. Palmer.*

For respondent there was a brief over the names of *William
D. Fenton* and *Bronaugh & Bronaugh,* with an oral argument
by *Mr. Fenton.*

MR. JUSTICE BEAN, after stating the facts, delivered the
opinion of the court.

The court approaches the examination of the questions
involved on this appeal unembarrassed by the consideration
that its decision will affect the title to the land sold under the
execution issued on the judgment in favor of the defendants
and against the plaintiff. The redemption, on December 31,
1901, by Murdock, for and on behalf of the plaintiff, operated
as a termination of the effect of the sale or a payment and
satisfaction of the judgment (B. & C. Comp. § 250), so that,
whatever conclusion we may reach, it will not result in the title
to real property of the value of $30,000 passing to a purchaser
at an execution sale for $42. The possibility of such a result,
however, under the law, without the knowledge of the owner
of the property, would seem to suggest the advisability of legis-
lative action.

1. Property is levied upon under an execution in the same
manner and with like effect as similar property is attached:
B. & C. Comp. § 233. Prior to 1889, real property was attached
"by leaving with the occupant thereof, or, if there be no occu-
pant, in a conspicuous place thereon, a copy of the writ certi-
fied by the sheriff" (Hill's Ann. Laws, § 149), thus, in effect,
actually seizing the property, and providing for notice to the
owner, or some one representing him. The legislative assembly
of that year, however (Laws 1899, p. 231, § 1), so amended
the law that real property is now attached by delivering to the
clerk of the county in which it is situated a certificate contain-
ing the title of the cause, the names of the parties to the action,
a description of such real property, and a statement that the
same has been attached at the suit of the plaintiff (B. & C.
Comp. § 301), apparently without observing that such amend-

ment would affect the manner of levying thereon under an execution. It would, therefore, seem as if real property may now be levied on under a writ of execution without an actual seizure of the property, or notice to or knowledge of the owner, and, as there is no law requiring notice of a motion for an order confirming the sale thereof, it is possible for the real property of a judgment debtor to be sold, the sale confirmed, and the time for redemption expire, without his knowledge, unless from time to time he searches the public records, or happens upon the advertisement of the sale in some obscure newspaper, where such advertisements are frequently published, or chances to see it in some place where posted by the sheriff. But these are matters for legislative, and not judicial, action, and so we pass to a consideration of the question in hand.

2. Nothing is claimed by the plaintiff for the order of the court made on its own motion January 24, 1902, attempting to vacate and set aside the sale. This order was made after the expiration of the term of court at which the sale was confirmed, and consequently is void. A court has the inherent power to vacate its judgments or orders at any time during the term, but after that time it can only do so in pursuance of the provisions of the statute: B. & C. Comp. § 103; *Deering* v. *Quivey,* 26 Or. 556 (38 Pac. 710).

3. The motion of the plaintiff, filed on February 7, 1902, to vacate the order of confirmation, and for leave to file objections to the same, is based upon the section referred to (section 103), which declares that the court may, in its discretion, and upon such terms as may be just, at any time within one year after notice thereof, relieve a party from judgment, order, or other proceeding taken against him through his mistake, inadvertence, surprise, or excusable neglect. The motion was not made within one year after the order. The plaintiff contends, however, that it was within time, because made within one year after actual notice of such order to his authorized agents, Macmaster & Birrell. We have no doubt that the application for the relief of a party against whom an order, judgment, or decree is taken through his mistake, surprise, or excusable neglect

42 OR.—28

may be made within a year after notice thereof: *Wieland* v. *Shillock,* 23 Minn. 227; *Knox* v. *Clifford,* 41 Wis. 458; *Schobacher* v. *Germantown F. M. Ins. Co.* 59 Wis. 86 (17 N. W. 969); *Turner* v. *Leathem,* 84 Wis. 633 (54 N. W. 1001). We are likewise of the opinion that the statute provides a means whereby a judgment debtor may be relieved upon a proper showing from an order confirming a sale of his property under an execution, where such order is taken against him through his mistake, surprise, or excusable neglect; but we do not think the plaintiff has brought himself within the provisions of the section, because the application was not made within the time provided, and because the order was not taken against him through excusable neglect. It appears from the motion and papers in support thereof that Murdock, who was retained by plaintiff in the matter of the settlement or payment of the judgment, had notice of the sale, the confirmation thereof, and of all proceedings had therein, and, instead of filing objections to the confirmation of the sale, or moving within time for relief from the order of confirmation, preferred to redeem the property. If he was in fact the attorney for Brand, and authorized to represent him in the matter, the latter is bound by his knowledge, and is himself chargeable with notice of the proceedings, and therefore the application to be relieved therefrom was not within time. Notice to an attorney is notice to his client, within the meaning of the statute, and ordinarily no relief will be granted to a party on account of the mistake or neglect of his attorney, unless it is such as would be excusable if attributable to himself: 15 Enc. Pl. & Pr. 247; 1 Freeman, Judgm. (4 ed.) § 112; *Sargent* v. *Kindred,* 5 N. D. 472 (67 N. W. 826; *Schobacher* v. *Germantown F. M. Ins. Co.* 59 Wis. 86 (17 N. W. 969); *Jex* v. *Jacob,* 7 Abb. N. C. 452.

If, however, Murdock was not Brand's attorney, but was acting wholly without authority, as now seems to be contended, then his agents in Portland were inexcusably negligent in not ascertaining what steps, if any, had been taken to enforce the judgment, and therefore the order of confirmation was not taken against the plaintiff through his excusable neglect. They

knew that the judgment had been rendered, and was not paid,
and they were chargeable with knowledge that, under the law,
an execution could be issued thereon, the property of the judg-
ment debtor seized and sold, and such sale confirmed, without
notice to them or their principal, unless objections thereto were
filed within a certain time.	The law does not require notice to
a judgment debtor of a proposed effort to collect the judgment
against him, nor of the levy and sale of his property under an
execution issued thereon, except by the filing of the sheriff's
certificate in the county clerk's office, and the publication and
posting of notices of sale.	While it would no doubt have been
an act of courtesy on the part of the sheriff or the defendants'
attorney to notify Macmaster & Birrell, the plaintiff's agents
and sureties on the attachment bond, of the issuing of execu-
tion and the purpose to levy upon the property, they were
under no legal obligation to do so.	It was the duty of the
court, if the proceedings were regular, to confirm the sale on
January 24, 1902, as there had been no objections filed thereto,
and the time for filing the same had long since expired; so that
this order cannot be said to have been taken against the plain-
tiff through his excusable neglect, simply because he had no
personal knowledge thereof.	Mr. Justice CORLISS, in speaking
of the duty of a judgment debtor who sought to set aside a sale
on the ground of inadequacy of price, and that he had no
knowledge thereof until after the time for redemption had ex-
pired, said: ''Under ordinary circumstances he should not be
heard to plead that he was ignorant of the fact of sale. Know-
ing that there is a judgment lien against his land, and that the
creditor is under no legal obligation to notify him of a single
step connected with the sale of his land under the judgment, he
must be on the alert to ascertain whether his land has been or
is about to be sold.	Certainly, it is not a harsh rule which ex-
acts of him such diligence, such measure of business prudence,
in looking after his own interests, as is involved in the not diffi-
cult task of discovering within a year of the day of sale that his
property has been sold under the judgment, which he knows is
a lien against it.	He can always absolutely protect himself by

paying the judgment; and, if he does not pay it, he at least knows that a sale may at any time take place, without his being personally notified of such fact. It is customary for the sheriff to make report of the sale, and the law contemplates that an order confirming such sale may be entered. These papers are ordinarily made matters of record about the time of the sale, and it is an almost invariable custom to record the certificate of sale issued at the time the sale is made. For these reasons we do not think that the owner may couple with mere inadequacy of price his own inattention to his personal affairs, resulting in the loss of the right to redeem, and on this basis build up an exception to the rule that inadequacy of price affords no ground for relief, because the debtor might have redeemed. He cannot lose this right of redemption through his own want of diligence, and then urge its loss as a reason for taking his case out of the rule: *Warren* v. *Stinson,* 6 N. D. 293, 299 (70 N. W. 279).

So, in this case, the plaintiff and his agents, through their inattention or want of diligence, could not let the time go by without any effort to learn of the sale of the property under the execution, or the confirmation thereof, and then urge their want of notice as a reason for applying a year and a half after the sale for relief therefrom, or from the order of confirmation. It does not appear that they made an examination of the record, or inquiry of any officer or person who would likely possess knowledge on the subject, but they seem to have relied entirely upon Murdock, and therefore it is no legal excuse that they did not know of such proceedings. If objections had been filed to the confirmation of the sale, or if the plaintiff had known of the sale, and intended to file such objections, but was prevented from doing so by accident, surprise, or excusable neglect, or perhaps, even, if he had been so prevented from learning of the sale or of the confirmation thereof, there would be some ground for the argument that he should be entitled to relief under the statute, if his application was made within time. The statute, however, confines the relief to a party against whom a judgment, order, or other proceeding has been

taken through his mistake, inadvertence, surprise, or excusable neglect, and a judgment or order is not so taken simply because the party did not know of it, unless the law requires him to be notified, when the means of knowledge were accessible, and he simply failed or neglected to avail himself thereof.

4. There is another reason why the order vacating the sale would seem to be erroneous, even if the court had jurisdiction to make it.    The redemption, in December, 1901, by Murdock, acting as the agent and representative of the plaintiff, terminated the effect of the sale and restored the plaintiff to his estate: *Cartwright* v. *Savage*, 5 Or. 397; *Settlemire* v. *Newsome*, 10 Or. 446; *Flanders* v. *Aumack*, 32 Or. 19 (51 Pac. 447, 67 Am. St. Rep. 504.)    It is true the plaintiff says that the redemption by Murdock was made without express authority from his authorized agents; but it was made with his money, under general authority to pay and satisfy the judgment, the certificate of redemption was issued to him, and there is no showing that he ever repudiated it.    We are therefore forced to conclude upon this record that the order of the court below vacating the confirmation of sale was erroneous, and that such order must be reversed and the application dismissed.

REVERSED.