Argued March 5, affirmed March 19, 1918.

# GILLARD *v.* GILLARD.

(171 Pac. 557.)

**Partition—Report of Referees—Presumptions.**

1. In suit to partition 80 acres of land by a wife, who was awarded one third thereof in a divorce suit, where the referees set off 26 acres to her of the most valuable land, and the remainder containing the buildings and less valuable land to the husband, their award may be sustained by invoking the presumption of Section 799, subdivision 15, L. O. L., that the official duty was regularly performed.

> [As to the presumption that referee has passed upon all matters submitted in reference, see note in Ann. Cas. 1916A, 362.]

**Partition—Report of Referees—Impeachment—Affidavit—Sufficiency.**

2. Assuming that a referee in partition can impeach the report which he voluntarily signed, affidavit that he did not know that the referees could report that the land should be sold was insufficient for such purpose, since it was a plea of ignorance of the law, which was no excuse.

**Partition—Apportionment to Wife—Evidence—Sufficiency.**

3. Testimony in partition that land set off to the husband consisting of 60 acres was not worth more than the 20 set off to the wife does not show that by reason of the buildings on the husband's share his land was not worth twice the value of the land set off to the wife.

From Linn: WILLIAM GALLOWAY, Judge.

Department 2. This is a suit by Nettie E. Gillard against William H. Gillard, M. F. Hays, James Gerwick and Charlotte Gerwick to partition real property. The facts are that in a prior suit by the plaintiff against William H. Gillard, one of the defendants herein, she secured a decree of divorce December 30, 1915, and there was also awarded to her an undivided one third of 80 acres of land which was owned by the defendant in that suit and described as the west half of the east half of the west half of section 36, township 10 south, range 2 west in Linn County, Oregon. Prior to the commencement of the divorce suit, Gillard, in consideration of $7,000, of which sum $1,500 was paid down, executed a contract for the sale of that

land and of some personal property to a Mr. Anning, who subsequently assigned all his interest therein to the defendants, James Gerwick and Charlotte Gerwick, his wife. After the divorce suit was commenced, the defendant Gillard on October 11, 1915, executed to the defendant Hays a mortgage on such real property to secure the payment of $2,218.23, as the remainder due upon a promissory note for $2,500, which mortgage was recorded the day it was given. Two days thereafter Hays also began an action against Gillard in the Circuit Court for that county on a promissory note of $1,000, secured a writ of attachment pursuant to which the described land was levied upon and, without any appearance on the part of the defendant therein, obtained against him a judgment December 3, 1915, for that sum with interest at the rate of 6 per cent per annum from September 17, 1914, $100 as attorney's fees, and an order directing a sale of the real property.

The complaint herein states in effect the facts mentioned and alleges that the 80 acres of land is worth $7,000; that Hays secured his mortgage and judgment with knowledge of the plaintiff's right to the real property; that Gerwick and his wife have not kept their part of the agreement which was assigned to them; and that their interest in the land was acquired with knowledge of the plaintiff's superior right thereto. The prayer of the bill is that there be set off to the plaintiff and to the defendant Gillard in severalty, quantity and quality to be relatively considered, the interest of each respectively in and to the real property.

The joint answer of Gillard and Hays denies that the land is worth $7,000, or that it is of any greater value than $3,500; admits that Hays knew of the pendency of the divorce suit but denies that his mortgage

or judgment is subject to the plaintiff's right to the real property, or that the interest of Gerwick and his wife is subordinate to that of the plaintiff in the premises. For a second defense it is substantially alleged that on July 21, 1909, Gillard became indebted to Hays in the sum of $2,500, which was evidenced by a promissory note, and in order to secure the payment of the remainder due thereon, Gillard executed to Hays the mortgage mentioned, which was received subject only to the plaintiff's inchoate right of dower in the land; that no part of the debt evidenced by the mortgage has been paid; that on September 17, 1914, Gillard was indebted to Hays in the further sum of $1,000, evidenced by another promissory note, after the maturity of which an action was instituted thereon, resulting in the judgment hereinbefore mentioned, no part of which has been paid. For a further defense it is alleged that the land so described consists of a narrow strip, a part of which is hilly and without water or road, and the entire tract is so situated that it can not be equitably divided; and that it is to the interest of all parties that the real property be sold. The prayer of the answer is that Gerwick and his wife be decreed to have no right, title or claim in or to any part of the land; that the liens in favor of Hays be determined, and that the real property be sold and the proceeds arising therefrom be applied (1) to the payment of the costs and expenses of this suit and of such sale; (2) that the liens in favor of Hays be discharged, and (3) if any money then remain one third thereof be paid to the plaintiff and the remainder to the defendant Gillard.

The reply put in issue the allegations of new matter in the answer, and further averred that after the divorce suit was commenced the defendants Gillard

88 Or.—7

and Hays intending to cheat, wrong and defraud the plaintiff, entered into a conspiracy for that purpose, pursuant to which Gillard, without any consideration therefor, gave to Hays the pretended promissory notes mentioned, whereby the mortgage so executed to, and the judgment obtained by Hays, are fraudulent and void as to the plaintiff. The prayer of the reply is that Hays be decreed to have no right, title or interest in or to the land, and that the plaintiff is the owner in fee of an undivided one third thereof.

The cause was tried and from the testimony received findings of fact were made in conformity with the averments of the complaint, and to the effect that as the mortgage was not signed by the plaintiff, Hays took no interest in or lien upon her right to any part of the land; that the $1,000 promissory note, given by Gillard to Hays, was without consideration and made with the intent to cheat, wrong and defraud the plaintiff; and that the land could be partitioned without material injury to either party. A decree was thereupon rendered that the plaintiff was the owner in fee of an undivided one third of such land free from any lien thereon, and that the defendant Gillard was also the owner of the remainder of the estate in the premises; Joseph Funk, Edward Dorgan and A. L. Geddes were appointed referees to partition the real property by setting apart to the plaintiff in severalty, quantity and quality to be relatively considered, the part so awarded to her, and the remainder to the defendant Gillard, which tracts were to be surveyed and marked upon the ground by proper monuments; and that the defendant Hays take nothing as against the plaintiff by reason of his mortgage or judgment.

The persons so appointed having duly qualified, examined the premises, and set off to the plaintiff and

indicated by proper monuments a tract commencing at the southwest corner of the real property first hereinbefore described; thence north 53.33 chains; thence east 5.00 chains; thence south 53.33 chains to the south line of section 36; thence west 5.00 chains to the place of beginning and containing 26.66 acres, which land was to be held by her in severalty free from any interest, right or claim of either of the defendants therein or thereto. The referees also set off and marked in the same manner the remainder of the 80 acres to the defendant Gillard in severalty free from any right therein or claim thereto by the plaintiff. The exceptions of the defendants Gillard and Hays to the report of the referees were overruled and a supplemental decree was given approving such report, whereupon Gillard alone appeals.    AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. L. M. Curl.*

For respondent there was a brief over the name of *Messrs. Weatherford & Weatherford,* with an oral argument by *Mr. James K. Weatherford.*

MOORE, J.—It is contended that the referees, who were appointed to partition the land, construing the interlocutory decree as mandatory, complied with its terms instead of recommending to the court that such division could not be equitably made, and that in setting off to the plaintiff the quantity of land awarded to her from the best part of the farm, a great injustice was inflicted upon the defendant. An examination of the land described in the complaint will show that it is 10 chains or 40 rods in width and 80 chains or 320 rods in length. The evidence shows that the north part of the premises is elevated and while about five

acres on the hill have been cultivated that part of the land is rocky and unproductive. Though the only way of reaching the summit is by a trail which cattle have made, the path is sufficient to enable farming implements to be taken to and from the hill. No water, except the rainfall, is found on that part of the land, which is of no value except for pasturage. A county road extending east and west crosses the land about the middle. A house and barn have been built north of the road, on which side of the highway about five acres of level land have been cultivated, and two springs at the foot of the hill afford water for domestic purposes. At the south end of the farm is a slough having brush around its margin. Mr. Gillard testified that there had been cultivated about 15 or 16 acres of land south of the county road and about a half acre north thereof. M. F. Hays, his witness, stated upon oath, however, that about 30 or 35 acres of the land had been farmed, five acres of which were north of the highway. Mr. Gillard insisted that the real property could not be equitably divided, and for that reason the land should be sold. It was therefore to his interest to minimize as much as possible the area of cultivated land, and this being so the testimony of Mr. Hays on this branch of the case is entitled to greater credit. His sworn statement, respecting the quantity of land which was susceptible to farming, will be accepted as a fair estimate.

1. It will be remembered that the land set off by the referees to the plaintiff consists of a strip 5 chains in width, or one half of the breadth of the entire tract and extends north from the south boundary 53.33 chains, thereby leaving to Mr. Gillard the greater part of the poor land on the hill and giving him only the east half of the south part of the premises. A mere

comparison of the apparent relative values of the
tracts thus segregated would induce the conclusion
that the division was very prejudicial to his rights and
evidenced a want of proper discrimination on the part
of the referees in making what should have been an
equitable division of the real property.   Though no
testimony was given tending to show the reasons which
prompted a division of the premises in the manner in-
dicated, by invoking the disputable presumption "that
official duty has been regularly performed" (Section
799, subd. 15, L. O. L.), the referees must necessarily
have considered the value of the house, barn and other
improvements upon the land which they set off to Mr.
Gillard on the north side of the county road.   The
plaintiff referring to these buildings testified generally
that the party receiving one third of the land meas-
ured from the south end would not secure the house or
barn.   We conclude, therefore, that the real property
was equitably partitioned in severalty to the plaintiff
and Mr. Gillard.

2. The affidavit of E. Dorgan, one of the referees, is
to the effect that at the time of making the allotment
he believed the best interests of the parties would
have been subserved by a sale of the land; that he did
not then know it was within the powers of the referees
to advise such a course; that he understood from the
interlocutory decree that the referees were commanded
to partition the real property and for that reason he
did not recommend a sale thereof.   This sworn state-
ment is equivalent to a plea of ignorance of the law
in respect to the questions submitted, which lack of
knowledge excuses no person.   If Mr. Dorgan alone
had reported that the real property of which division
had been decreed was so situated that partition thereof
could not have been made without great prejudice to

the owners, the court might not have been satisfied from the showing, or made an order directing the land to be sold: Section 447, L. O. L. Assuming without deciding that a referee under such circumstances can be permitted to impeach a report which he voluntarily signed with two others, his affidavit is insufficient for that purpose.

3. The testimony of A. L. Geddes, another referee, is to the effect that 60 acres of land on the hill was not worth more than 20 in cultivation on the south part of the premises. This sworn statement does not challenge the conclusion hereinbefore reached that the value of the house and barn which were erected upon the tract awarded to Mr. Gillard, did not make the land set off to him twice the worth of that appropriated to the plaintiff. No error was committed in confirming the report of the referees.

In support of the judgment which the defendant Hays secured against Mr. Gillard there was received in evidence the original note, purporting to have been executed September 17, 1910, for $1,000, payable in five years with interest after date at the rate of 6 per cent per annum. A certified copy of the mortgage of the land, executed by Mr. Gillard to Hays was also received in evidence. This sealed instrument contains a copy of the note intended to be secured, which is for $2,500, dated July 21, 1909, and was made payable in seven years with interest after date at the rate of 6 per cent per annum. Though neither of these notes contain a stipulation for the payment of interest until maturity, indorsements of interest were annually made thereon.

The testimony shows that when Mr. Gillard purchased his farm he borrowed $500 from Hays for which he gave a promissory note that was received in

evidence but has not been brought up. Several witnesses testified that Mr. Gillard had remarked in their presence and hearing that he had paid off that note. Mr. Hays testified that Mr. Gillard was indebted to him to the extent of about $2,500, which sum of money was used by the borrower in purchasing stock to be placed on the premises. The $2,500 so referred to was probably evidenced by the mortgage note and did not include the $1,000 judgment besides interest, attorney's fees, etc. Mr. Hays is a day laborer and he is probably not accustomed to loaning large sums of money, and for that reason ought to remember the circumstance. It seems altogether improbable that he should forget an item of more than $1,000, if the transaction were other than a mere sham. The answer to the complaint herein avers that the farm is not worth more than $3,500. It seems doubtful that a sum of money equal to the alleged value of the land would have been loaned by Hays without security at a low rate of interest, which was not payable until five and seven years respectively. He testified that at one time he notified the assessor of a credit which he held of $80, but that for four or five years prior to the trial he had not been assessed, which fact tends to confirm the conclusion that he was a willing party to a deliberate fraud.

It also appears from the testimony that about January 1, 1915, when Mr. Gillard negotiated a sale of the farm, he received on account of the purchase price $1,500 and soon thereafter loaned $800, taking a mortgage as security therefor, and that the defendants Gillard and Hays, as witnesses, had an opportunity fully to explain the times, places and circumstances of the alleged loans and the sources from which the money, designated to be evidenced by the promissory

notes, was obtained. Instead of taking advantage of the occasion each seemed studiously to avoid any reference thereto, except in a general way, and from the manner in which they testified on this branch of the case we are satisfied the trial court properly concluded that the alleged loans were fraudulent, the judgment void, and that a conspiracy had been entered into between these defendants, to prevent the plaintiff from securing the fruits of her divorce decree.

After the defendants James Gerwick and his wife had been served with a copy of the summons in this suit, an amended complaint was filed but no order was made fixing the time within which they should answer, as required by the statute: Section 70, L. O. L. These defendants not appearing in any manner, a finding of fact was made to the effect that they held a contract to purchase the farm for $7,000, but had not performed their part of the agreement, and that whatever interest they or either of them had or held in or to the real property was subject to the paramount rights of the plaintiff thereto. No decree was made strictly or otherwise foreclosing such contract, and by reason thereof the rights of Gerwick and his wife have not been barred, and the plaintiff and Gillard hold the tracts so allotted to each, subject to the terms of the contract of purchase.

It follows from these considerations that the decree should be affirmed, and it is so ordered.    AFFIRMED.

McBRIDE, C. J., McCAMANT and BEAN, JJ., concur.