Argued at Pendleton May 3; affirmed June 15, 1943

# LOTHSTEIN v. FITZPATRICK ET AL.
### (138 P. (2d) 919)

Before BAILEY, Chief Justice, and BELT, LUSK, and HAY, Associate Justices.

*Celia L. Gavin,* of The Dalles, and *Ralph E. Moody,* of Salem (Gavin & Gavin and Donald E. Heisler, all of The Dalles, on the brief) for appellant.

*T. Leland Brown,* of The Dalles (Brown & Van Vactor, of The Dalles, and McCamant, King & Wood, of Portland, on the brief) for respondents.

HAY, J. Edward C. Fitzpatrick and John H. Fitzpatrick, father and son, as copartners, were engaged in farming and sheep raising in Wasco county, Oregon. On June 15, 1932, they executed their promissory note in favor of the First National Bank of The Dalles, Oregon, in the sum of $14,604.33, due one year after date and bearing interest at the rate of eight per cent per annum. As security, they executed and deliverd to the bank a mortgage upon 2240 acres of land in Wasco county.

On December 24, 1932, the bank was declared insolvent and the Comptroller of the Currency appointed a receiver, who took charge of its assets.

On December 23, 1934, Edward C. Fitzpatrick died intestate, and the county court for Wasco county appointed John H. Fitzpatrick as administrator of his estate. The inventory of the property of the estate included 1920 acres of land, covered by the mortgage above mentioned. For some reason not disclosed by the record, no separate administration was had upon the partnership property, and it was included in the general administration. Notice to creditors was duly published, and, on February 25, 1935, the bank, by its receiver, duly presented to the administrator its claim based upon said promissory note, which claim was allowed.

On January 24, 1936, the administrator filed his final account. Therein he stated that he had paid all claims which had been presented against the estate, except one which he had rejected, and, with reference to the bank's claim, alleged as follows:

"The real property as shown in the inventory and appraisement  *  *  * · had been mortgaged by the decedent and this administrator to the First National Bank of The Dalles, Oregon, for the sum of $14,604.33. The administrator is unable to pay said indebtedness as shown in the proof of claim filed by O. A. Carlson, as Receiver of said bank, for the payment of said sum of money. The Bank's claim was secured by said mortgage and note and the said Receiver accepted a quitclaim deed executed by all of the heirs of the estate as herein named, and delivered to the said Receiver with the understanding that he is to receive title to all of the lands described therein upon the approval by the Court of this accounting, and title is to vest in said Receiver as soon as the administrator has been discharged from his duties and said estate closed."

The account stated further that there remained in the administrator's hands the sum of $2,201.78 in cash, one-half of which he had distributed to himself as surviving partner of the decedent and the remainder to the heirs at law, leaving no assets on hand. No formal voucher evidencing payment of the bank's claim was produced, nor was any evidence of waiver or relinquishment thereof filed.

The county court fixed February 29, 1936, as the time for hearing of the final account, and due notice of such hearing was published. No objections were filed, and, on the date fixed for hearing, the court made an order approving the account, settling the estate, discharging the administrator and exonerating his bonds-

man. With reference to the bank's claim, the order contained the following:

"That the real property shown in the inventory and appraisement * * * had been mortgaged by the decedent and said administrator to the First National Bank of The Dalles, Oregon, for the sum of $14,604.33. It further appears that the administrator was unable to pay said indebtedness and that the Receiver accepted a quitclaim deed executed by the heirs of the estate as herein named and delivered to O. A. Carlson, Receiver of said institution as a settlement of said claim and that said quitclaim deed has been recorded in the Deed Records of Wasco County, Oregon."

On April 24, 1937, J. B. McCook, who had succeeded Carlson as receiver of the bank, filed in the county court for Wasco county a petition for an order vacating the order approving the final account. Upon such petition, the court made an order to show cause, which was duly served upon the administrator and surviving partner, John H. Fitzpatrick, upon his bondsman, New Amsterdam Casualty Company, a corporation, and upon the heirs at law. These parties thereupon demurred to the petition, and, on January 6, 1940, the receiver filed an amended petition.

The amended petition, after reciting the formal facts of the insolvency of the bank, the appointment of the original receiver, Carlson, his resignation, the appointment of McCook as his successor, his resignation, the appointment of the petitioner as successor, the execution of the mortgage and note, the death of Edward C. Fitzpatrick and the appointment of John H. Fitzpatrick as administrator of the estate, the filing of the bank's claim with the administrator, and the filing of the administrator's final account, quoted in full the allegation

in said final account respecting the conveyance of the mortgaged real property to the receiver, as set forth above. Such allegation, the petition stated, was not a claim of payment nor a claim of settlement or compromise of the indebtedness due the bank, no release of the claim or voucher for the payment thereof having been presented or filed by the administrator, none having been obtained, and no compromise of such indebtedness having been made.

The amended petition alleged further that the administrator's final report recites:

"The Administrator alleges that he has fully administered the estate and distributed the property of the estate to the heirs subject to approval of this court, and that more than six months have elapsed since the appointment of such administrator and that the estate is now ready for closing."

It averred that these allegations were false, in that the bank, which was a creditor of the estate, had not been paid. It said further that the administrator's report did not account for all of the property listed in the inventory; that it did not show the payment of the claims, debts and expenses in the order provided by law; that it alleged payment of claims in an order contrary to law; that it did not show payment of the partnership indebtedness before payment of indebtedness of the individual estate, but, on the contrary, showed payment of claims against the individual estate prior to payment of partnership indebtedness; that it showed distribution of the balance of cash on hand to John H. Fitzpatrick, the surviving partner, in the sum of $1,100.89 and to the heirs at law of Edward C. Fitzpatrick in a like sum; that it showed that such distribution was made prior to the filing of the report; and that

such distribution was fraudulently made, was beyond the power of the administrator and contrary to law, for the reason that the debts of the partnership and of the decedent had not been paid.

The petition further alleged that the heirs of Edward C. Fitzpatrick, deceased, on January 8, 1936, executed a quitclaim deed to Carlson as receiver for the bank, covering the mortgaged real property; that such deed was given by the heirs and accepted by the receiver upon the understanding that "the trust of such Receiver" should sell said land and apply the proceeds of such sale upon the bank's promissory note; that the deed was not given and was not accepted as a compromise and settlement of the debt; and that it was and is beyond the power of the receiver to accept such property in compromise settlement.

Continuing, the petition alleged that the petitioner is a creditor of the decedent and of the partnership; that the order approving the final account and discharging the administrator is void; that the court was without jurisdiction to close the estate; and that the representations contained in the final account of the administrator were fraudulently made. As reasons why such order is void, the petitioner alleged that the order recited that the administrator had a cash balance in his hands for distribution, that all the claims that had been presented to the administrator had been paid in full, that the estate was ready for final settlement, that the administrator was unable to pay the bank's claim, and that the receiver had accepted a quitclaim deed executed by the heirs as a settlement of the bank's claim. Such recitations and findings, the petition stated, were not based on facts, in that the administrator did not have a cash balance in his hands for

distribution, that any distribution made was without authority and void, that all the claims presented to the administrator had not been paid in full, the claim of the receiver not having been paid, that the estate was not ready for final settlement, and that the receiver had not accepted and could not accept a quitclaim deed executed by the heirs of the decedent as a settlement of his claim.

The petition stated further that it was filed "within one year of the discovery of such fraudulent report", by direction and authority of the Comptroller of the Currency. It prayed for an order vacating the order approving the final account and discharging the administrator, and that the administrator be required to administer the estate as by law provided.

To the amended petition, the administrator and surviving partner, the heirs and the administrator's bondsman duly demurred on the following grounds: (1) that the amended petition did not state facts sufficient to entitle the petitioner to any relief; (2) that the court had no jurisdiction of their persons or of the subject-matter; and (3) that the amended petition showed on its face that the action had not been commenced within the time limited by law.

On August 22, 1940, the county court made an order sustaining the demurrer, from which order the receiver duly appealed to the circuit court for Wasco county. Thereafter, by leave of court, Sally Lothstein, who in the meantime had purchased the bank's claim, was substituted for such receiver as appellant.

On June 22, 1942, the circuit court sustained the demurrer and dismissed the amended petition, and Sally Lothstein has appealed to this court.

No question was argued upon this appeal respecting the legal effect of the action of the administrator in administering upon the assets of the partnership estate and of the general estate in the same proceeding, and hence we need not pass upon that question.

There is considerable discussion in the briefs of the various procedural steps which are required by law in the administration of estates. The only matters before us for consideration, however, are the administrator's final account, the proceedings thereon, the order approving it, and the question of whether or not such order is subject to the attack which is here made upon it.

█ Under the law of Oregon, county courts, when sitting in probate, are courts of general and superior jurisdiction. Const., Original Art. VII, sec. 12; section 13-501, O. C. L. A.; *Rutenic v. Hamakar,* 40 Or. 444, 451, 67 P. 196; *In re Wilson's Estate,* 85 Or. 604, 613-14, 167 P. 580. Judgments and decrees of courts of probate are final and conclusive upon all parties before the court, including creditors. *State v. O'Day,* 41 Or. 495, 501, 69 P. 542. The decree of a probate court allowing or disallowing an administrator's final account, under the authority of section 19-1006, O. C. L. A., is a final decree from which an appeal will lie. *In re Prince's Estate,* 118 Or. 210, 216, 221 P. 554, 246 P. 713.

█ A probate court is without authority to open, revise, amend or vacate its judgments or decrees after the expiration of the term in which they are rendered. *In re Mannix's Estate,* 146 Or. 187, 196, 29 P. (2d) 364; *Deering v. Quivey,* 26 Or. 556, 560, 561, 38 P. 710; *First Christain Church v. Robb,* 69 Or. 283, 286, 138 P. 856; *Hicks v. Hill Aeronautical School,* 132 Or. 545, 548, 286 P. 553; 3 Woerner, Administration, 3 ed., section 507.

■ Relief from such judgments or decrees may be had by any party against whom they have been taken through mistake, inadvertence, surprise or excusable neglect, within one year after notice thereof (section 1-1007, O. C. L. A.), but no such relief is sought in this proceeding.

■ A judgment or decree that is absolutely void is a mere nullity and may be vacated by the court at any time, whether before or after the expiration of the term during which it was rendered. *Ladd v. Mason,* 10 Or. 308, 311, 312; *White v. Ladd,* 41 Or. 324, 330, 68 P. 739, 93 Am. St. Rep. 732; *Brand v. Baker,* 42 Or. 426, 433, 71 P. 320; *Huffman v. Huffman,* 47 Or. 610, 618, 86 P. 593, 114 Am. St. Rep. 943; *Johnson v. Savage,* 50 Or. 294, 298, 91 P. 1082; *Stivers v. Byrkett,* 56 Or. 565, 573, 108 P. 1014, 109 P. 386; *Finch v. Pac. Reduction etc. Co.,* 113 Or. 670, 673, 234 P. 296.

■ Where an executor or administrator has been guilty of fraud in the administration of the estate, a court of equity has jurisdiction to set aside an order settling the final account of such executor or administrator, at the suit of any party who has suffered detriment because of such fraud. *Froebich v. Lane,* 45 Or. 13, 22, 23, 76 P. 351, 106 Am. St. Rep. 634; III Bancroft's Probate Practice, sections 1002 and 1003.

The appellant takes the position that the order which she seeks to have set aside is void. To sustain this position, she suggests that it was prematurely made, in that it had the effect of settling the estate while the appellant's claim, which had been duly filed and approved, was still outstanding and unpaid. Furthermore, she insists that the order is necessarily void, because those allegations of the final account which recite the conveyance of the mortgaged real property by the heirs

to the receiver, implying that the receiver accepted such conveyance as a discharge of his claim against the estate, were false and fraudulent.

█ Such allegations, as quoted hereinbefore, contained a statement that title to the property was to vest in the receiver upon approval of the final account, and this statement, taken in conjunction with the allegation that the moneys of the estate which remained in the administrator's hands had been distributed between the surviving partner and the heirs at law, was construed by the distinguished judge of the circuit court as tantamount to a direct allegation that the conveyance had been accepted by the receiver in settlement of the indebtedness. We feel that such construction was proper. We think that there can be no question but that the administrator laid all of his cards on the table, and did nothing to lull the receiver into a sense of false security, and so prevent him from raising whatever objections he might have had to the approval of the final account and having them adjudicated at the hearing. It is apparent that, if there was any fraud in the proceedings, it was intrinsic, and not extrinsic or collateral. The allegations, which the receiver now claims to have been false, raised the very issues which the court had before it for determination. The order of the court based thereon was not void, nor can intrinsic fraud be relied upon as a ground for vacating it or setting it aside. It is in the interest of the state that there should be an end to litigation. *United States v. Throckmorton,* 98 U. S. 61, 25 L. Ed., 93; *Price v. Smith,* (Tex. Civ. App.) 109 S. W. (2d) 1144, 1149, 1150; 31 Am. Jur., Judgments, section 735. (For the distinction between extrinsic and intrinsic fraud, see 31 Am. Jur., Judgments, section 654, and annotation in 88 A. L. R. 1201.)

The question arises whether or not the conveyance of the mortgaged property to the receiver had the effect, on the principle of merger, of payment or extinguishment of the indebtedness which was secured thereby. The appellant contends that the principle of merger is not applicable, because the receiver had duly filed his claim against the estate and had not released or withdrawn it. This would not appear to be conclusive as against the allegations of the final account which indicate that the conveyance by the heirs was intended as, and was accepted as, payment of the indebtedness. The general rule is that the doctrine of merger applies where the title to a mortgage and title to the mortgaged property become united in the same person. An extinguishment of the mortgage indebtedness will be presumed unless a contrary intention appears. Anno., 95 A. L. R. 89, 90; *Barber v. Hartley,* 136 Or. 210, 219, 298 P. 226. So far as the record before us discloses, there was no intention on the part of the receiver to prevent an extinguishment of the indebtedness. It is true that the appellant contends now that the agreement between the receiver and the heirs was that the former should take title to the property for the purpose of selling it and applying the proceeds of sale in extinguishment of the indebtedness *pro tanto.* The proper time to have raised this contention, however, was upon the hearing on the final account, where, if the receiver had filed appropriate objections, the court could have determined the matter upon evidence. Immediate possession of the property by the receiver without the expense of foreclosure, and elimination of the statutory period of redemption, might have been sufficient reasons to cause him to enter into such an agreement as that set forth in the account. Extinguishment of the indebtedness, and

the consequent distribution to them of the moneys remaining in the hands of the administrator, might have been sufficient to persuade the heirs to execute the conveyance to the receiver. On the other hand, the appellant's present contention may be true, but, in our opinion, the controversy is concluded by the decree of the court approving the final account and closing the estate.

The appellant contends that the receiver of an insolvent bank is an officer of limited authority, and that in this case, except by permission of the Comptroller of the Currency and approval by a court of competent jurisdiction, the receiver had no power to compromise the bank's claim. As to this, the law presumes that the receiver had taken the necessary steps to arm himself with the required authority, if in fact the transaction may be described as a compromise of the indebtedness. It was his official duty to do so, and there is a disputable presumption that official duty has been regularly performed. Section 2-407 (15), O. C. L. A.; *School Dist. No. 1 v. School Dist. No. 45,* 148 Or. 554, 576, 37 P. (2d) 873; *Latourette v. Kruse,* 139 Or. 422, 424, 10 P. (2d) 592; *Gillard v. Gillard,* 88 Or. 95, 101, 171 P. 557; 20 Am. Jur., Evidence, section 170. The receiver had constructive notice of the hearing, which is all that the law requires to be given, and he was thus given ample opportunity to appear and make whatever objections he may have had to the allowance of the account, but he failed to do so. We think that the appellant cannot now be heard to raise those questions which the receiver failed to raise at the proper time. If, as a matter of fact, he lacked the necessary authority to compromise the claim, then he should have brought that matter to the attention of the probate court.

The appellant argues that the general demurrer which was interposed by the respondents in the lower court "admits the facts stated in the petition". A demurrer, however, admits only those facts which are well pleaded, and every reasonable and proper inference deducible therefrom. *Wills v. Nehalem Coal Co.,* 52 Or. 70, 76, 96 P. 528. In this connection, the appellant contends that the demurrer admitted the allegations of the amended petition, to the effect that the administrator filed a purported final account, distributed cash, and closed the estate while it was not ready for settlement, not having been completely administered, no payment, waiver or compromise of the receiver's claim having been alleged in the account, and none having been made. These allegations were merely statements of fact contradicting allegations in the final account, which were themselves modified by other allegations therein, showing compromise or satisfaction of the receiver's claim. In respect of the matters covered by all of such allegations, the decree of the county court, sitting in probate, is *res judicata.*

Based upon the contention that a renunciation of a promissory note must be in writing unless the instrument be delivered up to the person primarily liable thereon, (section 69-804, O. C. L. A.), the appellant contends that the administrator could not proceed to close the estate without having had the promissory note surrendered to him, or procuring written waiver thereof by the receiver. On this point, he cites *Portland Iron Works v. Siemens,* 135 Or. 219, 295 P. 463. The objection, however, should have been raised before the probate court, as it has reference not so much to the fact of renunciation or discharge of the note as to the method of proving such renunciation or discharge. It is not before us properly upon this appeal.

■ The action of the administrator in distributing the money remaining on hand before approval of his final account was an irregularity, but it is not ground for setting aside the final order. Any objection which the receiver may have had to such action should have been presented to the probate court in due course. 21 Am. Jur., Executors and Administrators, section 481.

We are of the opinion that the demurrer of the respondents to the amended petition of the receiver in this case was properly sustained. The order of the circuit court is affirmed, with costs.