[Filed April 14, 1891.]

## JAMES STEEL, ADMINISTRATOR, *v.* JOSEPH HOLLADAY.

COMMISSION OF EXECUTOR, WHEN NOT ALLOWED.—No commission can be allowed an executor on property which never came into his possession, nor on property which, although it belonged to the estate, has not been administered on and is not under the control of the probate court.

UNUSUAL AND EXTRAORDINARY SERVICES, WHAT ARE.—Unusual and extraordinary services of an executor, for which the court is authorized to allow compensation, are such services as are not ordinarily required of an executor in the discharge of the duties of his trust.

IDEM—CLAIM FOR.—The claim of an executor or administrator for unusual or extraordinary services should contain a statement of each special service claimed to have been rendered, with its particular value; and until such an account is presented, no allowance should be made therefor.

EXECUTOR ALLOWED REASONABLE ATTORNEY'S FEES. — An executor is entitled to reasonable attorney's fees in any necessary litigation or matter requiring legal advice or counsel.

CLAIM FOR ATTORNEY'S FEES, HOW PRESENTED.—A'claim of an executor for attorney's
    fees should ordinarily be presented in an itemized form and not for an aggregate
    amount by the year; but under the peculiar circumstances of this case, this rule
    ought not to be enforced.
EXECUTOR—CLERK HIRE.—It is the duty of an executor to keep and render a just
    account of his trust, and if he thinks proper to keep a clerk for that purpose he
    must do it at his own expense.

Multnomah county: L. B. STEARNS, Judge.

Defendant appeals. Modified.

*Williams & Carey,* for Appellant.

*Williams & Wood, Mitchell & Tanner,* for Respondent.

BEAN, J.—By the last will and testament of the late Ben
Holladay, the appellant Joseph Holladay was appointed
executor of his estate. His right to act as such was contested,
and finally sustained in this court. (*Holladay* v. *Holladay,*
16 Or. 147.) On the 11th day of April, 1888, he duly
qualified and continued to act as such executor until May
31, 1889, when he was removed on the petition of Esther
Holladay, widow of Ben. Holladay, by the county court of
Multnomah county, for neglecting to file an inventory and
appraisement of the property belonging to the estate, and
the respondent James Steel appointed as administrator
thereof. On an appeal to this court, the decree of the
county court was affirmed. (*In re. Holladay Estate,* 18 Or.
168.) On May 20, 1890, appellant filed his final account as
such executor, in which he claimed an allowance of $10,000
for attorney's fees, $7,912 as compensation for his own
services, and $700 for the services of a clerk. The respond-
ent as administrator contested his right to an allowance for
any of the items claimed by him, except the sum of $2,000
for attorney's fees, and on a trial in the county court he was
allowed $4,916.66 for attorney's fees, but nothing for either
of the other items. On an appeal to the circuit court the
decree of the county court was affirmed, and hence this
appeal.

At the time of Mr. Holladay's appointment as executor,
all the property belonging to the estate of Ben Holladay
was in the possession of himself and one George Weidler as
receivers, and Mr. Weidler as trustee, and continued in their

possession until after Mr. Holladay was removed as executor, so as a matter of fact no property whatever was reduced to his possession as executor. The compensation of an executor, unless provided in the will, is fixed by statute, and he is entitled (1) to all necessary expenses incurred by him in the management and settlement of the estate, including reasonable attorney's fees in any necessary litigation or matter requiring legal advice or counsel; (2) his commission on the whole estate accounted for by him; and (3) such further compensation as may be just and reasonable for any extraordinary and unusual services not ordinarily required of an executor in the discharge of his trust. (Hill's Code, §§ 1178, 1180.) No property belonging to the estate came into the possession of appellant as executor, and none is accounted for by him, so there is nothing upon which his commission can be estimated or determined. No commission can be allowed on property which never came into the possession of the executor, nor on property which, although it belonged to the estate, has not been administered on and is not under the control of the probate court. (2 Woerner on Ad. § 528.) Although the estate of Ben Holladay was the owner of a large amount of property, it was in the possession of receivers, and neither the appellant as executor nor the county court had any control over it. The amount of the commissions of an executor is a mere matter of mathematical calculation based upon the whole estate accounted for by him, and until he has possession of some property and accounts for the same, there is nothing upon which to base such calculation, so that on the record before us, appellant is entitled to no compensation whatever, unless it be for extraordinary and unusual services not ordinarily required of an executor. The claim presented by him is a general one for $5,000 per year, without in any way specifying the special service rendered or the particular value thereof. The fees provided by statute are to be deemed ample compensation for an executor, except in unusual cases and when he is required to render extraordinary services not ordinarily required of

an executor. His additional compensation, if any, is within the discretionary power of the court to allow, and when a claim is made therefor, it should be scrutinized with care and never allowed unless the court is satisfied that it is just and reasonable, and the services for which it is made should be stated and particularly set forth in order that the court may know precisely for what services the extra compensation is asked, and the heir, creditor or other persons interested in the estate may be informed so as to know what items, if any, they may desire to contest.

In *Wisner* v. *Mabley Estate,* 70 Mich. 285, it is said: "And no such account for services should be allowed without such statement is furnished by the executor or administrator of the estate." So in *May, Admr.* v. *Green,* 75 Ala. 167, SOMERVILLE, J., said: "The record fails to disclose any special or extraordinary services for which the administrator was entitled to compensation. Proof, moreover, should have been made of each special service, with its particular value, and the whole should not have been aggregated by mere estimate without being itemized." To the same effect: 2 Woerner Law of Adm. § 529; *Miller's Ex.* v. *Simpson,* 2 S. W. Rep. 171.

The record before us does not disclose that appellant performed any services not ordinarily required of an executor, but, as he says, they were "in managing the property and correspondence in regard to claims." These are services that usually fall within the ordinary routine of administration and for which no extra compensation is allowed. What are "extraordinary and unusual services" will depend largely upon the peculiar circumstances of each particular case, and the allowance of compensation for such services is largely in the discretion of the court; but before the court can allow anything therefor, the claim should be itemized and each special service rendered with its particular value stated, so that the court may act intelligently in the matter and be able to deal justly both with the estate and the executor. The claim presented in this case is for the aggregate sum of $7,912, without giving the items going to make up the

XX OR.—30.

amount, nor is the proof any more definite. The only witness who testifies in regard to the value of the services is the appellant himself, and he places them at $5,000 per year, without attempting to give each special service with its particular value, as the law requires he should do before being allowed anything therefor. It is true the record shows that appellant devoted a great deal of time to the business of the estate, and it seems but just that he should receive a reasonable compensation therefor, which no doubt he would be allowed if the services rendered were unusual or extraordinary, within the meaning of the law (a question, however, which is unnecessary for us to decide), on the presentation of a proper account. But he has accounted for no property belonging to the estate, and therefore is not entitled to the commission allowed by law; and the services rendered by him were not unusual and extraordinary, unless the peculiar condition of the estate rendered them so; and if they were, neither the claim presented nor the proof furnishes any basis upon which his compensation can be ascertained. To allow an aggregate claim of an executor against an estate for extraordinary services, supported alone by his opinion as to the aggregate value of his services, would violate all the rules of both justice and law and throw the door wide open for unscrupulous executors and administrators to rob and plunder the estates of their decedents.

We pass now to the claim for attorney's fees. That an executor is entitled to reasonable attorney fees in any necessary litigation or matter requiring legal advice or counsel, is not denied; nor is it denied that the employment of Mr. Williams as attorney by appellant was necessary and proper, but it is claimed that the services rendered were not reasonably worth the sum charged therefor. At the time of Mr. Holladay's appointment as executor, the business of the estate was very much complicated; the assets, consisting of stock in various corporations and large bodies of real estate in different parts of the state, were in the hands of receivers. The estate was largely indebted to various and sundry per-

sons, both in and outside of this state, the aggregate amount of which was near $500,000, and the estate was supposed to be insolvent. In this condition of affairs, Mr. Holladay was unable to secure the services of an attorney who would undertake the laborious and exacting duties required and look to the estate for his compensation. He was therefore compelled to pledge his own personal credit, in order to secure the services of an attorney at all, which he did by employing Mr. Richard Williams, at the agreed compensation of $5,000 per year. Mr. Williams continued to act as his attorney until his discharge, and it is clear, we think, from the evidence, that the services rendered by him were reasonably worth the amount agreed upon. It is so testified by Mr. Williams as well as Judge Bellinger, who was particularly conversant with the vast and conflicting interests involved and the complicated nature of the business. Indeed, it is not seriously contested by respondent, but it is claimed in his behalf that an itemized account for such services should have been rendered, and until this is done the executor is not entitled to an allowance therefor. The general rule undoubtedly is that all claims against a decedent's estate should be presented, if possible, in an itemized form, and it would have been much more satisfactory in this case if that had been done. The court should ordinarily refuse to allow an executor credit for alleged expenses in the settlement of the estate unless the account is definite and the services proved to have been actually rendered and reasonably worth the sum charged. Such is the general rule, and courts should be slow to depart therefrom. But we think, under the peculiar facts of this case, the court sitting as a court of equity, should not allow this wholesome rule to be invoked to defeat a just claim. The reason of this rule rests in the jealous care with which courts guard the estates of deceased persons, to prevent the allowance and payment of unjust and unreasonable claims. It requires each item of the alleged claim to be stated, with its particular value, so that the executor and all persons interested may have a full

opportunity to resist the payment of such items thereof, if any, as may be desired. But when the reason for the rule does not exist, the rule itself should not be operative. It would be impracticable, if not impossible, for an attorney of an executor engaged in the management of an estate as vast and complicated as the record shows this one to have been, to render an itemized account for his services. Almost his entire time was occupied in consultation with the executor and matters connected with the estate. Claims aggregating large sums and involving intricate and complicated questions were presented for examination and investigation; suits and actions against the estate on alleged claims amounting in the aggregate to near $150,000 were being prosecuted in both the state and federal courts. Some of these alleged claims grew out of transactions which took place in other states, rendering a vast amount of correspondence and investigation necessary in order to prepare for the defense of the actions brought thereon. From the time of the application of appellant for the appointment as executor until his final discharge, the estate seems to have been constantly harassed and annoyed by suits, actions and proceedings in the courts. It was highly important that he have the advice and assistance of an attorney, and the contract with Mr. Williams was made in good faith, the services faithfully rendered and reasonably worth the sum agreed upon. The estate received the benefit, and it would now be unjust and inequitable to require Mr. Holladay to pay from his private funds for the services of Mr. Williams rendered him as executor or any portion thereof, simply because an itemized account has not been kept or rendered.

The claim of $700 for the services of a clerk was properly disallowed. The record does not disclose that Mr. Holladay paid out any money whatever for clerk hire, nor that he obligated himself to do so. The person whom he claims acted as his clerk was in the employ of the mill company, at a salary of $125 per month, during the time he charges the estate with $50 per month for the services of the same

person, and does not appear to have been employed by the executor; and, besides, "it is the duty of an executor to keep and render a just account of his trust, and if he is incompetent or too indolent to do so, and thinks proper to keep a clerk for that purpose, he must do it at his own expense." (*Teague* v. *Dendy*, 2 McCord Ch. (S. C.) 459, 16 Am. Dec. 643; *Logan* v. *Logan*, 1 McCord Ch. (S. C.) 1; *Lucich* v. *Medin*, 3 Nev. 93, 93 Am. Dec. 376; *In re Moore*, 72 Cal. 359.)

It follows, therefore, that the decree of the court below must be modified so as to allow appellant for attorney's fees from the 11th day of October, 1887, to the 31st day of May, 1889, at the rate of $5,000 per annum, and in all other respects affirmed, and that appellant recover his costs and disbursements in this court and the court below.