Argued at Pendleton October 30, 1923, modified January 22, 1924.

## Re Estate of JOHN D. McDERMID. ELIZA J. McDERMID *v.* GEORGE B. BOURHILL, Exr.

### (222 Pac. 295.)

**Executors and Administrators—Executor Entitled to Possession of Land Until Final Account or Order Turning It Over to Him as Trustee.**

1. Notwithstanding defendant was executor and trustee of decedent's real estate, he, as executor, was, in view of Sections 1288, 1292, Or. L., entitled to possession of the real estate until the filing of the final account or some order of the County Court wholly or partially turning it over to him as trustee, though, so far as was known, the personal property was ample for the payment of debts.

**Executors and Administrators—Executors Required to Inventory and Account for Real Estate and Entitled to Commissions Thereon.**

2. Executor of an estate, who was also named as trustee, was required to inventory and have appraised and to account for the real estate he was entitled to commissions thereon as executor.

**Executors and Administrators—Compensation Agreed to be Given Executor's Attorneys Held Ample, and Larger Allowance Error.**

3. The agreement of defendant executor of an estate to pay his attorneys the same amount as the law allowed executors, which amounted to $3,764.48, *held* to afford ample compensation to them; the estate being valued at approximately $180,000, and it was error to allow more than that sum, especially where litigation was occasioned by defendant's refusal to admit widow's right of dower.

**Executors and Administrators—Executor Held not Liable for Holding Wheat Until Price Fell.**

4. An executor *held* not liable for failing to sell wheat until the price materially fell, where his action in doing so was in compliance with the widow's wishes as well as with his own judgment, and other farmers and dealers made the same mistake.

From Sherman: D. R. Parker, Judge.

In Banc.

This is a proceeding arising upon objections made by Eliza J. McDermid to the final account of George B. Bourhill, executor of the last will and testament of John D. McDermid, deceased.

John D. McDermid died in Multnomah County on February 21, 1920. At the time of his death he was a resident of Sherman County and had been a resident of that county for many years. He left a will by which the defendant, Bourhill, was appointed as executor, without bonds; bequeathing all of his personal estate, after providing for the payment of his debts and the expense of a monument, to his wife, Eliza J. McDermid.

A clause in the will is as follows:

"Fourth: I give, devise and bequeath unto George B. Bourhill, of Moro, Oregon, as trustee, and to be disposed of by him as hereinafter directed, all of the real estate of which I may be seized or possessed at the time of my death, and wheresoever the same may be situated, the same to be held and managed by the said trustee, and all of the net income therefrom to be paid by the said trustee to my said wife, Eliza J. McDermid, during the time she may live, and that upon her death the said trustee shall, as soon thereafter as may be practicable sell and dispose of all of said real estate upon such terms and conditions as he may consider to be most advantageous and beneficial, and out of the proceeds arising from said sale, my trustee is hereby directed to dispose of the same as follows":

Then follow bequests to certain nephews and nieces and other parties, and to the Presbyterian Church of Moro, Oregon, with directions that, after payment of these gifts and bequests, the trustee and executor of the instrument should divide the remainder among certain other relatives of deceased.

The will was duly presented for probate, and on the fifteenth day of March, 1920, Bourhill was appointed executor, and letters testamentary were issued to him. Thereafter he filed an inventory and appraisement of the property, which consisted largely

of real estate, and appraised the whole estate at the
amount of $134,813.39.  The appraisement was ob-
jected to by the State Treasurer, who alleged the
appraisement was insufficient and inadequate, as ap-
plied to all of the real property described in the in-
ventory and appraised at an aggregate value of
$113,405, and alleged that the full and correct value
of said items was approximately $203,375.  At the
hearing held by the County Court for the purpose of
disposing of the objections Mrs. McDermid appeared
in person and by her attorney, and the executor by
his attorneys, and it was then stipulated between the
parties, in open court, that a decree might be made
and entered in the County Court canceling and set-
ting aside the inventory and appraisement formerly
filed, so far as it related to the appraised value of
the real property, and a revaluation and reappraise-
ment made of the real property by the court of $142,-
362.50; and an order to that effect was accordingly
entered.  This made the complete appraisement of
the property amount to $182,224.01; the personal
property and income amounting to $39,861.51.

Shortly after the appointment of Bourhill as exec-
utor Mrs. McDermid applied to the County Court
for assignment of her dower.  Bourhill appeared and
disputed her right to dower, and, such right being
disputed, the County Court was without jurisdiction
and dismissed the proceedings.  Thereafter Mrs.
McDermid instituted proceedings in the Circuit Court
of Sherman County for assignment of dower, and the
Circuit Court held that, having accepted the provi-
sions of the will, she had elected to waive her dower,
and entered a decree against her, from which she ap-
pealed to this court, where the decree of the Circuit
Court was reversed and we held that, she was en-

titled to dower in the property. See *McDermid* v. *Bourhill,* 101 Or. 305 (199 Pac. 610, 22 A. L. R. 428).

Bourhill proceeded with his duties as executor, filing three semi-annual accounts, and on April 26, 1922, filed his final account and asked to be discharged. He employed originally as his attorneys Mr. Bryant and Mr. Bright. Later Mr. William A. Carter became associated with the case. He agreed with his attorneys to pay them for their services the same amount as the law allows an executor, which, if the value of the land is to be included as a basis of compensation, would amount to $3,764.48. In his final account the executor claimed this sum as his commission, and also the amount of $500 for alleged extra services, and the sum of $3,764.48 for attorney's fees, and also asked for a further allowance of $1,000 for the attorneys. The County Court allowed the commission asked, disallowed the claim of the executor for $500 for extra services, and allowed $233.52 beyond the stipulated compensation to the attorneys, making their compensation in all $4,000. From these allowances Mrs. McDermid appealed to the Circuit Court of Sherman County and said allowances were confirmed. From that decree appellant has brought this appeal; the principal item in the contention being the claim that the executor could not be allowed a commission upon the real estate, stating the contention as follows:

"The executor could not take possession of the real estate in this instance or hold or manage it as executor because the will prohibits his doing so and expressly requires him to hold and manage it as trustee."

And, further:

"The personal property being more than sufficient to pay all claims and expenses of administration, the

executor had no right to the possession of the real estate or the rents thereof.''

MODIFIED.

For appellant there was a brief and oral argument by *Mr. W. H. Wilson.*

For respondent there was a brief and oral arguments by *Mr. William A. Carter* and *Mr. William C. Bryant.*

McBRIDE, C. J.—1. We are clearly of the opinion that the executor was entitled to possession of the real estate until the filing of the final account or some order of the County Court wholly or partially turning it over to him as trustee. The sections of the statute bearing upon this are as follows:

''§ 1288. [Or. L.] Administrator Chargeable With the Amount of Inventory. An executor or administrator is chargeable in his account with all the property of the estate which may come into his possession, at the value of the appraisement contained in the inventory, except as in this chapter otherwise provided.''

''§ 1292. [Or. L.] Amount of compensation Allowed Executor or Administrator. The compensation provided by law for an executor or administrator is a commission upon the whole estate accounted for by him, as follows: * *.''

The difficulty in this case is solved by mentally segregating the dual relation of Bourhill as executor from his relation to the estate as trustee under the will. The two offices are practically distinct; as much so as though Bourhill had been appointed executor of the will and some other person as trustee. His executorial duties must first be performed before he can exercise his duties as a trustee. As remarked

by Mr. Justice Moore, in *Roach's Estate,* 50 Or. 179, 187 (92 Pac. 118):

"Where the same person has been appointed by a will to perform such dual duty in respect to the property of an estate, no service is demanded of him as testamentary trustee until he has fully performed his executorial obligation and secured an order of the probate court discharging him and liberating his bondsmen. Thus in *Prindle* v. *Holcomb,* 45 Conn. 111, it was held that the probate records should show that an executor's account had been settled, before a testamentary trustee was entitled to take and hold the property of the estate for the purposes of the trust. In *White* v. *Ditson,* 140 Mass. 351 (4 N. E. 606, 54 Am. Rep. 473), in speaking of an executor, the court say: 'While Healy fully completed the administration of the estate by the payment of all debts, legacies and expenses, he settled no final account as executor, and did not, by any open, notorious act, discharge himself as such in the probate court by assuming to transfer the residue of the property to himself as trustee, or by any other act indicating an intention thereafter to hold the same for the purposes of the trust. * * As actual payment cannot be made by one to himself, it has been held that, where the same person is executor and trustee, he must give bond in his character of trustee before he can exonerate himself from his liability as executor.' "

Of course, in the present case, Bourhill, neither as executor nor trustee, was required to give any bond.

2, 3. We think clearly it was the right of Bourhill to take possession of the real estate and to account for it. So far as known, when the inventory was filed the estate owed very few debts and the personal property was apparently more than sufficient to cover such debts as were known at that time; but until six months had expired it could not be known, as a matter of law, what other claims might be presented, and it followed, naturally, as a matter of prudence

as well as a matter of law, that the executor should retain possession of the property. It was within his power all the time. He was the only one who was authorized to collect rents due upon leased property during the time of his executorship, and such control as the law gave him was possession, within the meaning of that word. "Possession means simply the owning or having a thing in one's power; it may be actual, or it may be constructive." *Brown* v. *Volkening,* 64 N. Y. 76, 80.

In *Illinois Steel Co.* v. *Jeka,* 123 Wis. 419, 429 (101 N. W. 399), the court, citing *Booth* v. *Small,* 25 Iowa, 177, defines possession of land as follows: "Possession of land is the holding of and exclusive exercise of dominion over it." See, also, Oxford Dictionary, subject, Possession.

Not only was the possession constructive, but Bourhill actually exercised acts of possession by collecting the rents and accounting for them to the estate, taking charge of the grain raised upon the land, and such other acts of possession as McDermid himself might have exercised in his lifetime. In *In re Higgins' Estate,* 15 Mont. 474, 486 (39 Pac. 506, 28 L. R. A. 116), Mr. Justice HUNT makes the following observations in a case where the person nominated in the will both as executor and trustee undertook to omit administration of the estate as executor, and attempted to function only as trustee:

"In passing upon the right of possession of realty conferred upon an executor, Field, C. J., in *Weeks* v. *Hahn,* 20 Cal. 621 (1862), held that under the Code of California, which contained at that time a provision similar to Section 127 of the Montana Probate Practice Act, that although the estate of an intestate descended to the heirs, subject to the payment of his debts, 'yet this provision must be read in connection with the clauses of the other statutes to which we

have referred, which place the right of present possession in the administrator'; and that such right of possession remained in the executor until the estate was settled, or delivered over to the heirs, by order of the probate court. And the court conclude that, under the statutes of California, which are substantially like ours, 'the right to the possession of the real property of an intestate remains exclusively with the administrator until the estate is settled, or distribution is directed by order of the probate court.'

"The Supreme Court of Nevada in *Gossage* v. *Crown Point M. Co.,* 14 Nev. 153 (1879), discussing the possession of realty by an administrator, as given by a statute similar to that of this state, held that such possession 'is for the benefit of the creditors and the heirs,' and for the purposes of administration. * * "

" ' * * And, again, before there could be any transmutation of property, as contended by defendants' counsel, the executor must have settled his final account of administration in the court of probate, * *.' [Citing from *Hall* v. *Cushing,* 9 Pick. 395.] * *

" * * 'It is not legally correct to say that a testator has the *jus disponendi* of his property; it is true only *sub modo.* The executor, as such, is bound to administer the whole estate, as well that not given by the will as that embraced in it. (*Hays* v. *Jackson,* 6 Mass. 149.) The first claim on the estate is that of creditors; and it cannot be known until an inventory is returned and an account settled, whether the whole estate will not be necessary for the payment of debts. * * to enable the executors to perform the trust which the law devolves upon them, the whole property must, in the first instance, come to them, and be disposed of in an orderly course of administration, which the testator cannot control. * * ' " [Citing from *Newcomb* v. *Williams,* 50 Mass. 525].

In *Jones* v. *Broadbent,* 21 Idaho, 555 (123 Pac. 476), the court said:

" * * The duties of plaintiffs as executors and trustees are separate, distinct and independent of each other; and until the executors are discharged, and they assume the duties of trustees, their powers and duties as executors continue. See *Bellinger* v. *Thompson,* 26 Or. 320 (37 Pac. 714, 40 Pac. 229), and authorities there cited; *In re Roach's Estate,* 50 Or. 179 (92 Pac. 118); 18 Cyc. 1112. * * "

We think that Bourhill, as executor, was clearly required to inventory and have appraised and account for the real estate, and was entitled to commissions thereon. His claim for $500 extra compensation was disallowed, and, no appeal having been taken, it does not figure in this case. We think the court erred in allowing him $233.52 extra compensation for his attorneys; the compensation agreed upon between him and them being, in our opinion, ample. A great deal of the litigation in this case was occasioned by Bourhill's refusal to admit the widow's right of dower in the premises, and she has been put to trouble and expense enough in maintaining that right, without having to pay Bourhill's attorneys for resisting a claim which this court has found to have been just and which the statute and the authorities amply sustain.

4. There was another objection urged, arising out of the fact that Bourhill failed to sell wheat when he could have obtained a comparatively high price for it, but held it until the price fell materially before making a sale. It appears, however, from the testimony, that in doing this he was complying with the widow's inclinations in the matter, as well as acting upon his own judgment, and that other farmers and dealers made the same mistake. His delay in the matter, under the circumstances, affords no indication of carelessness or neglect.

109 Or.—41

Several other minor objections are made, which we do not consider well taken. The final report might be made a little clearer than it is, but an examination of it indicates that from it Mrs. McDermid or other beneficiaries under the will can arrive at the exact condition of the estate.

There is evidently a feud between the parties, probably arising out of the circumstances recounted in the opinion of *McDermid* v. *Bourhill* heretofore mentioned, and it seems to have gone to such a pass that both parties are willing to waste money in unnecessary litigation.

We do not find any such defects in the final account as would justify us in sending the case back to allow the parties to indulge in their passion for litigation at further expense to the estate. The decree of the Circuit Court will be modified by disallowing the item of extra compensation for attorneys' fees, and neither party will recover any costs in this court; otherwise, the decree of the Circuit Court will be sustained.                                          MODIFIED.

BURNETT, J., not sitting.

Mr. Justice HARRIS having resigned and Mr. Justice COSHOW having been appointed since this case was submtted, neither took part in this decision.