Argued September 18; affirmed November 25, 1947

IN RE FEEHELY'S ESTATE

*ALLEN* ET AL. *v.* UNITED STATES NATIONAL
BANK OF PORTLAND (OREGON),
EXECUTOR

187 P. (2d) 156

*C. W. Pecore,* of Portland, for Appellants.

*J. S. Middleton and Wilber Henderson,* both of Portland (Platt, Henderson, Warner, Cram & Dickinson on brief), for Respondent.

Before Lusk, Acting Chief Justice, and Kelly, Bailey and Hay, Justices.

LUSK, Acting Chief Justice.

This is an appeal from the order of the Circuit Court for Multnomah County, Department of Probate, overruling objections to the executor's final account in the estate of Louise M. Feehely, deceased. The objectors (herein called the appellants) are beneficiaries under the will of the deceased. Their objections all go to certain items of compensation for

services rendered by the executor and its attorney and allowed by the court.

## 1. *BASIS OF EXECUTOR'S STATUTORY COMPENSATION*

The appraised value of the estate as of the date of decedent's death was $22,738.00. During administration the executor collected rentals from real property of the estate aggregating $17,100.30. The executor claimed, and the court allowed, a statutory fee of $908.76, based upon the original appraised value of the estate plus the amount of the income moneys accounted for by the executor. The appellants contend that the fee should have been based upon the appraised value alone, and that no consideration should have been given to income subsequently accruing. This contention involves construction of the statute governing the compensation of executors.

Section 19-1011, O. C. L. A., provides:

"The compensation provided by law for an executor or administrator is a commission upon the whole estate accounted for by him, as follows:
"(1) For the first $1,000, or any less sum, at the rate of seven per centum thereof".

Then follow the percentage rates on sums above $1,000.00.

■ The decision turns upon the meaning of the words "upon the whole estate accounted for by him". Counsel for the appellants say that this phrase refers to the appraised value of the estate as fixed in the inventory, and cite *Stewart v. Baxter,* 145 Or. 460, 28 P. (2d) 642, 91 A. L. R. 818; and *Estate of McDermid,* 109 Or. 633, 222 P. 295. But in neither of these cases was this question raised. It is true that in the Stewart case this court appears to have computed the adminis-

trator's statutory fee on the appraised value of the estate, and one reading the opinion might infer, though it is not clear, that the administrator had received rental moneys which were not considered. The question with which we are now dealing, however, was not suggested. The administrator apparently was insisting on his right to compensation under an agreement with the heir. The court held that the agreement should be influential in fixing his compensation, determined the statutory commission on the appraised value, and added enough to that amount for extraordinary services to make the total equal to the agreed compensation. In the McDermid case the principal question, in so far as the fee of the administrator was concerned, was whether or not he was entitled to commissions on the value of the real estate. He was held to be so entitled. But we can find nothing in the opinion which indicates that the court thought that income received by the administrator should or should not be considered in fixing his compensation. In any event, under our statute, properly construed, the appraised value of the estate is *prima facie* the amount on which commissions are to be reckoned; and, as there appears to have been no claim in these cases that the appraised value was not the actual value, the court rightly used the appraised value in its calculations.

No other Oregon cases have been cited, and the question seems to be *res integra* in this state.

In other jurisdictions having statutes identical or substantially identical with ours it is held that the appraised value of the estate, as shown in the inventory, is only *prima facie* evidence of the value of the estate accounted for and is not conclusive for the purpose of fixing the representative's commission, the amount

of which should be fixed upon the value of the estate at the time of the settlement, the appraised value being disputed. *In re Pringle's Estate,* 51 Wyo. 352, 67 P. (2d) 204, 110 A. L. R. 987; *In re O'Connor's Estate,* 200 Cal. 646, 254 P. 269, 271; *Estate of Fernandez,* 119 Cal. 579, 585, 51 P. 851; *In re Ricaud,* 70 Cal. 69, 11 P. 471; *In re Hagerty's Estate,* 97 Wash. 491, 166 P. 1139; *In re Sour's Estate,* 17 Wash. 675, 50 P. 587, 588. In adopting this construction the California, Washington and Wyoming courts considered, with the statute fixing the compensation of personal representatives, other provisions of their statutes similar to §§ 19-1007 and 19-1008, O. C. L. A., which are as follows:

"§ 19-1007. An executor or administrator is chargeable in his account with all the property of the estate which may come into his possession, at the value of the appraisement contained in the inventory, except as in this chapter otherwise provided."

"§ 19-1008. He shall not make profit by the increase in value of the property of the estate, nor suffer loss for the decrease in value or the destruction thereof, without his fault; and if any of the property of the estate sell for more than its appraised value, he shall account for the excess; and if any such property sell for less than its appraised value, he shall not be responsible for the loss, unless occasioned by his fault. He shall not be accountable for the debts due the estate, if it appear that they remain uncollected without his fault. He shall not purchase any claim against the estate which he represents, and if he satisfies any such claim for less than its nominal value, he is only entitled to charge in his account the sum acutally paid."

■ Construing these provisions in *pari materia* with § 19-1011, which states that the representative shall have a commission "upon the whole estate accounted

for by him'', it seems logical to say that the estate upon which the representative's commissions are to be based is the same estate for which he must account. This is the estate at its value at the time of settlement, which includes, of course, accretions by way of rents, interest, etc. In the Pringle case, supra, the court said:

"The final account of a personal representative should show the items he is chargeable with at their inventory value as this may be corrected by reappraisement or actual sale of the several items or by evidence introduced before the court indicating their actual value, or by loss or destruction of property. To this should properly be added all accretions to the estate which have come into the possession of the executor, such as interest, profits on sales, etc. It is then an easy matter for the court to compute, under the statute, the amount of the estate 'accounted for' by its officer.''

There is language in the Ricaud case, supra, which indicates the same construction of the California statute. It is said by the appellants that these statements are dicta. Be that as it may, we think they are sound; and it should be said of the Pringle case, the opinion in which is carefully prepared and based upon a full consideration of the authorities, that the court, in the passage we have quoted, manifestly intended to pronounce a deliberate judgment for the guidance of personal representatives and the lower courts upon the question of the right of the representative to receive a commission on ''all accretions to the estate which have come into the possession of the executor.''

The opinion in *In re Lampman's Estate,* 15 Cal. (2d) 212, 100 P. (2d) 488, unmistakably shows that income received from rented property was considered as a part of the estate upon which the statutory com-

mission was computed; while in *Estate of Allen,* 42 Cal. App. (2d) 346, 353, 108 P. (2d) 973, 977, the court, after holding that allowance of ordinary fees based upon the inventory valuation was improper because the main assets of the estate had been sold for less than half of their appraised value, said:

> "However, it would appear that certain profits were made in operating the business during the first two years, which became a part of the estate and which should be taken into consideration in fixing the ordinary fees."

Thus, what is claimed to be mere dictum in the Ricaud case becomes actual decision in the last two cases cited.

In our opinion the construction announced by the California and Wyoming courts is correct; and we may add that it is reasonable to suppose that if the legislature had intended that the representative's commission should be based upon the value of the estate as appraised in the inventory, it would have said so. The objection to this item was properly overruled.

## 2. ATTORNEY'S FEES, EXECUTOR'S FEES, AND COSTS IN UNITED STATES NATIONAL BANK OF PORTLAND v. ALLEN, — OR. —, 170 P. (2d) 757

The probate court allowed the executor as attorney's fees "$500.00, as compensation for extraordinary services rendered in the three hearings in the Probate Court relative to sale of the real property of this estate and for services rendered upon appeal to the Supreme Court of the State of Oregon upon the issue of use or non-use of income moneys for the payment of debts and costs of administration". The court also approved and allowed expenses amounting to $298.58

incurred by the executor in appealing the above entitled case to this court.

This litigation had its inception in a petition of the executor to the Probate Court for an order authorizing the sale of certain real property of the estate for the purpose of raising funds with which to pay charges, expenses and claims against the estate. The present appellants contested the proposed sale. Tom Feehely, widower of the testatrix and a beneficiary of a trust created by the will, made no appearance. It was his desire that the property be sold. The question was three times presented to the court below, and was twice decided in favor of the executor. After a third hearing the court reversed its position and entered an order revoking its previous order for the sale of the property. The executor appealed, and this court affirmed. The question was whether, upon a proper construction of the will of the testatrix, viewed in the light of applicable rules of law, some $5,000.00 cash, the proceeds of the rentals of the real property sought to be sold and which was sufficient to discharge the claims, was legally available for their payment. If so, sale of the real property—the only income-producing property of the estate—would be unnecessary. We held that the cash became a part of the residue and as such could be used for the payment of claims, and, as stated, affirmed the order denying the petition for sale of the real property.

The objection of the appellants to allowance of the items now in question is that the appeal to the Supreme Court was unnecessary litigation. They call our attention to § 19-1009, O. C. L. A., which provides in part:

"An executor or administrator shall be allowed, in the settlement of his account, all necessary ex-

penses incurred in the care, management, and settlement of the estate, including reasonable attorney fees in any necessary litigation or matter requiring legal advice or counsel.''

They argue that the order of the Probate Court was final, binding upon all the parties concerned, and, unless appealed from, afforded complete protection to the executor had he complied with it, citing *Lothstein v. Fitzpatrick,* 171 Or. 648, 657, 138 P. (2d) 919; *In re Anderson's Estate,* 157 Or. 365, 371, 71 P. (2d) 1013; and 23 C. J., Executors and Administrators, 1175, § 393. There is also a suggestion in the brief, for which we find no support in the record, that the appeal was not taken in good faith.

■ The words ''necessary litigation'' in the statute from which we have quoted do not import an absolute. Litigation is necessary, in the sense of the statute, if it is reasonable, useful and proper. *Marshall County v. Rokke,* 134 Minn. 346, 159 N. W. 791, Ann. Cas. 1918D 932. See *In re Lowengart's Estate,* 160 Or. 118, 135, 84 P. (2d) 105; *Childers v. Brown,* 81 Or. 1, 6, 158 P. 166; *McCulloch v. State of Maryland,* 17 U. S. (4 Wheat.) 316, 4 L. ed. 579, 603; and definitions in 28 Words and Phrases (Perm. ed.) 161 et seq., and especially at p. 217.

■ Notwithstanding the executor, had there been no appeal, would have been protected had it abided by the decision of the probate court, it still remained its duty to execute the will of the testatrix. *In re Will of Hough,* 120 Or. 223, 227, 251 P. 711. The executor was of the opinion that, under the language of the will, properly construed, it had no authority to use income to pay claims against the estate. That it was not without a reasonable basis for that opinion is manifest. The

question was a novel one in this state. The Probate Court had rendered two decisions supporting the executor's view, and, as indicated by the opinion of this court in the case, there was substantial judicial authority on its side of the question. Under these circumstances, we think that in the sense of the statute the litigation was necessary, that it was the duty of the executor to prosecute the appeal, and that for its defeat in this court it should not be penalized by being required to pay its counsel fees and costs. *In re Johnson's Estate*, 100 Or. 142, 162, 196 P. 385, 1115. The conduct of the executor "is to be tested by the rule of good faith, and not by mere success." *In re Title Guaranty & Trust Co.*, 100 N. Y. S. 243, 144 App. Div. 778.

The Oregon cases which we have cited have to do, not with the sale of the real property of an estate, but with will contests. Together with the case of *In re Shepherd's Estate*, 152 Or. 15, 43, 44, 41 P. (2d) 444, 49 P. (2d) 448, they declare the duty of an executor to defend the will, and vindicate the executor's right to appeal, if in good faith he is satisfied that the will has been improperly rejected. The Hough case goes further, and holds that where the Circuit Court entered a decree which, while sustaining a will, erroneously ousted a beneficiary of his rights under its provisions, the executor was justified in appealing to the Supreme Court to obtain a correction of the error. The *Title Guaranty & Trust Co.* case, supra, and *Baldwin's Ex'r. v. Barber's Exr's.*, 148 Ky. 370, 146 S. W. 1124, tend to support the allowance of attorney's fees here in question. And see *In re Lowe's Estate*, 326 Pa. 375, 192 Atl. 405, 111 A. L. R. 518.

The present question, we think, is governed by the

principle that it is the duty of the executor to defend the will.

■ Under § 10-917, O. C. L. A., the costs incurred by the executor in prosecuting the appeal were properly chargeable upon the estate fund.

The reasonableness of the fee allowed the attorney, $500.00, for his services in arguing the matter in the Probate Court three times, taking an appeal, and preparing the brief and making an oral argument in this court, is not questioned by the appellants.

■ The court also allowed the executor "$250.00 as compensation for extraordinary services rendered in connection with the various litigations and other unusual circumstances attendant upon the probate of this estate". In adidtion to the contest over the proposed sale of real property, there was a suit commenced by Tom Feehely to establish a trust in certain assets of the estate. These are the "various litigations" referred to in the order. It was within the discretion of the Probate Judge to allow the executor additional compensation for whatever extraordinary services it may have been required to perform in connection therewith. This is not disputed, nor is there any contention that the services were not performed, nor that they were not reasonably worth the amount allowed. The objection to the allowance, so far as it relates to the case appealed to this court, is that the litigation was unnecessary. That contention has already been disposed of. As to both pieces of litigation, there is a claim that the allowance is improper because of what is asserted to be the negligence of the executor in the discharge of its official duties. We have reached the conclusion, for reasons presently to be stated in connection with other objections, that the charge of negligence is not

sustained. We are, therefore, of the opinion that the court was warranted in allowing the additional compensation to the executor as well as the items of attorney's fees and court costs which we have been considering.

### 3. EXECUTOR'S ADDITIONAL COMPENSATION FOR "PROPERTY MANAGEMENT"

Over the objections of the appellants the court allowed the executor additional compensation in the amount of $513.00 "for extraordinary services rendered as property manager in behalf of the estate". The will was admitted to probate April 3, 1941, and the order approving final account was entered November 4, 1946. It appears that the abnormal length of time taken for administering the estate was occasioned by its financial condition and the litigation above mentioned: to wit, a suit brought by Tom Feehely, widower of the testatrix and a beneficary under her will, to establish a trust in certain assets of the estate (which suit terminated in a decree in the Circuit Court); and the contest over the proposed sale of the real property to raise money for the payment of claims. During this period the executor collected rentals amounting to $17,100.30. On this amount the executor claimed, and was allowed by the court, in addition to the statutory commission of two per cent, compensation equal to three per cent, it being the purpose of the court, as stated in its order, "to allow to the Executor a total of five (5%) upon all rental moneys collected for the account of this estate during administration in accordance with the regularly accepted schedule of property managing agents for such services rendered within the City of Portland, Oregon."

The appellants assigned as grounds of their objections to this allowance, and have argued here, the following:

(1) That the executor was negligent in failing to obtain higher rentals from the property (which is business property and was not subject to rent control), as the result of which, it is claimed, the estate sustained a loss of at least $3,400.00;

(2) That the executor did not comply with Rule 9 of the Probate Court requiring that in accounts filed each item shall be numbered and the vouchers numbered to correspond with the account;

(3) That the executor did not comply with the requirement of § 19-1001, O. C. L. A., that semi-annual accounts be filed within the first ten days of April and of October of each year;

(4) That the executor's accounts do not comply with the requirement of § 19-1001, O. C. L. A., that accounts shall show from whom the moneys coming into the hands of the executor during the period covered by the account were received;

(5) That the executor violated Rule 11 of the rules of the Probate Court by paying $543.75 ($500.00 attorney's fees and the balance expense incurred) to a firm of attorneys retained to defend the Tom Feehely suit without first securing the approval of the court.

■ We will consider the first of the above grounds of objection last, taking up the others in their order. As to (2) we agree with the observation of the Probate Judge that the charge of negligence in violating Rule 9, "while technically correct, loses force in the face of the clarity and exactitude of itemization and accompanying vouchers". We likewise agree with the

Probate Judge's comment as to (3). He said: "No one interested in the estate and its administration has been either misled or deprived of any substantial right or privilege" and added:

> "If the accounts are carefully scrutinized, it will become apparent that the 'ten-day periods' alleged to be unaccounted for, according to the statement contained in this objection, are each gathered into succeeding accounts and are therefore included in the sequence of accountings."

■ Ground (4) apparently refers to the fact that in several of the accounts filed the items of rent received are not accompanied by the names of the respective tenants making the payments. But the particular premises are in each instance identified, and, as prior accounts and reports showed who were the tenants, it was a substantial compliance with the rule to indicate in the account the premises which produced the rent.

■ As to (5) it appears that Mr. J. S. Middleton, attorney for the executor, considered himself disqualified to defend the Tom Feehely suit because he had previously acted as Mr. Feehely's attorney, and that the executor employed Mr. Rupert T. Bullivant, of the firm of Pendergrass, Spackman & Bullivant, to represent the estate in that litigation and that Mr. Bullivant defended the suit, apparently with diligence and ability, and that the executor paid his firm the attorney's fees and costs in question, such payment being reported to the court in the executor's final account. The Probate Judge in his opinion, after observing that there was no criticism of the amount of the fee nor of the necessity of employment of independent counsel in the case (there is none here), indicated that he was more interested in the necessity for the action taken, and the substance of what was done than in failure to comply with

a purely formal requirement, and overruled the objection. By paying the attorneys without prior court approval the executor took the risk of disallowance of the item (*Stewart v. Baxter*, supra, 145 Or. 472), but, as it was allowed and concededly properly so, in relation to the worth of the legal services rendered, the appellants have no cause for complaint.

We see no merit in any of grounds (2) to (5), and are constrained to add that, in view of the meticulous care and businesslike thoroughness with which the affairs of the estate were administered, as shown by the accounts and other papers on file, we think these criticisms are captious to say the least of it.

We return to the first ground of objection, namely, that, due to the executor's negligence, income which should have been derived from increased rentals was lost to the estate. Counsel for the appellants has not in his brief contended that the services involved were not extraordinary services for which, under different circumstances, the executor would have been entitled to an extra allowance. He concedes that the statute, § 19-1011, O. C. L. A., makes provision for such additional compensation where, as stated in his brief, "an Executor performs unusual and extraordinary services * * * such as the collection of rents and the active and proper management of estate properties over a long period of years * * * ". He likewise concedes that the question whether such an allowance should be made is addressed to the sound discretion of the Probate Court whose decision will not be disturbed by this court except for manifest abuse of that discretion. The burden of his complaint is that services for which an additional allowance might have properly been made in other circumstances ought not to be re-

warded in this case because of the executor's alleged negligence.

Notwithstanding the narrow issue thus presented, we deem it our duty to examine the broader question whether the services may rightly be considered "extraordinary", and shall express our conclusion upon that question after first disposing of the charge of negligence.

The property involved is a one-story and basement commercial structure in Portland, known as the Feehely Building, the various rented spaces of which are designated 122-126-128-132-134 N. E. Broadway. At the time of the decedent's death the total rents paid by the tenants amounted to $260.00 a month. Number 122 N. E. Broadway was leased by the decedent on February 21, 1941, to Minneapolis-Honeywell Regulator Company at a rental of $50.00 per month, the term to expire February 28, 1942, with an option for an additional year at $50.00 per month. Through renewals and extensions of this lease the same tenant has remained in possession during the entire administration of the estate. The rent remained at $50.00 a month until March 1, 1944, when it was increased to $55.80, and on March 1, 1945, the lease was extended for a two-year period at $60.00 per month.

The tenant of 132-134 N. E. Broadway is the Paraffine Companies, Inc. Decedent leased these premises to that company for the period April 1, 1938, to September 30, 1940, at $140.00 a month, and thereafter until March 31, 1943, at $160.00 per month. Since the latter date, under extensions of the lease, this tenant paid rent at the rate of $160.00 a month until October 1, 1946, at which time the rent was increased to $270.00 per month.

The premises 126-128 N. E. Broadway have been rented to Bertha Ulrich on a month to month basis at $50.00 per month.

The testimony in support of the claim of negligence is in the form of a letter (admitted in evidence by stipulation of the parties) addressed under date of August 21, 1946, to counsel for the appellants by Mr. J. Fred Staver, of the firm of Staver, Soule & Co., business property realtors. Mr. Soule, who was familiar with the property through having sold it to the decedent and negotiated the original lease to Paraffine Companies, Inc., gave it as his opinion that the rental value of the three spaces is as follows: Paraffine Companies, Inc., $275.99; Ulrich, Interior Decorators, $60.00; Minneapolis-Honeywell, $80.00—a total of $415.00. He said in his letter:

"During the past few years and at present there is a big demand for space for stores, jobbing and warehouse purposes. Rentals from 50% to 100% over those of 1938 are common throughout the city."

He further said:

"Recovery began in 1941 and business has remained at a high level. This is reflected in the stock market, by commodity prices and by commercial rents."

There was also received in evidence by stipulation a letter written by Mr. C. I. Meyers, trust officer of the executor bank, whose qualifications as an expert were conceded. Mr. Meyers described the character of the neighborhood in an area of four blocks adjacent to the Feehely Building and the type of occupancy in various business structures therein, and showed that space similar to that in the Feehely Building was bringing in rentals comparable to those which the executor

had been receiving. He conceded that if in 1944 the executor had been willing to enter into long term leases, higher rents than those actually paid might have been secured for the last two years, but stated, with reference to the proceeding to determine whether income could be used to pay claims, that it was thought prudent not to encumber the property with long-term leases which would have adversely influenced the sale price if the Supreme Court had ordered the property sold. He further stated that, had the executor been willing to enter into five-year leases three years prior to September 26, 1946, when his letter was written, the rental for Minneapolis-Honeywell would have been $60.00 for the first year and $75.00 for the next four years; for Mrs. Ulrich $50.00 for the first year and $70.00 for the next four years; and for the Paraffine Companies $160.00 for the first year and $225.00 for the next four years. This would have produced a total of $21,000.00 for the five-year period. During the same years, he pointed out, the rentals actually collected will have aggregated $20,580.00, which approximates the amount which it was claimed on behalf of the appellants the property should have yielded.

So far as appears from the record before us, the entire evidence on this question is contained in these two letters. The burden was on the objectors to prove the charge of negligence, and it is our opinion, as it was that of the Probate Judge, that the burden has not been sustained. There is no answer to the showing on behalf of the executor that the rents charged were in line with those being paid by tenants of comparable properties in the vicinity. Absent cross-examination, it is impossible to say whether Mr. Staver would have been of the opinion that higher rents could have been obtained under short term leases. He gave no opinion

based upon the conditions with which the executor was faced. He expressed his judgment as to the reasonable rental values of these premises as of the date of his letter of August 21, 1946, but, while showing what we may judicially know, that business recovery began in 1941 and had continued, he did not state definitely at what time, in his opinion, the higher rents could have and should have been obtained. We think the claim of negligence has not been made out.

Section 19-1011, O. C. L. A., which fixes the compensation of personal representatives for the performance of their ordinary duties, also provides:

"In all cases, such further compensation as is just and reasonable may be allowed by the court or judge thereof, for any extraordinary and unusual services not ordinarily required of an executor or administrator in the discharge of his trust."

 Whether extra compensation should be allowed, and the amount thereof, rests largely in the discretion of the Probate Court, and its judgment will not be disturbed unless it clearly appears that there has been a manifest abuse of discretion. *In re Estate of Neil*, 117 Or. 76, 79, 242 P. 820, and authorities there cited. What are extraordinary and unusual services will depend largely upon the circumstances of each case. *Steel v. Holladay*, 20 Or. 462, 465, 26 P. 562. It was said in the same case, "before the court can allow anything therefor, the claim should be itemized and each special service rendered with its particular value stated". This is a requirement, however, which may be dispensed with where the services consist of managing real property over a period of years and the accounts and reports and petitions filed by the executor, with which the Probate Judge is presumably familiar, themselves indi-

cate what has been done. It is not practicable in such a case to value each special service, but the services, in view of their continuing nature, are to be valued as a whole. See *In re Seablom's Estate*, 231 Iowa 608, 1 N. W. (2d) 700.

The executor, in its final account, showed to the court that during the period of about five and a half years that the estate was open, "it has managed the real property of this estate and collected the rentals therefrom, negotiated extensions of leases thereon, and otherwise carried on a general property management administration for the estate's real property." An inspection of the file shows that the executor attended to two extensions of one of the leases and three of the other. Besides collecting the rents it looked after repairs, including a new roof for the building at a cost of $717.00, painting the interior, keeping the property insured, paying taxes, and generally, it may be assumed, did all the things necessary to be done in the management of a commercial property rented out to tenants.

Were these extraordinary and unusual services and outside of the ordinary routine of the executor's duties? To put it another way, was it within the discretion of the Probate Court to find that they were such, or can this court say as a matter of law that they were not? It is said in *Steel v. Holladay*, supra, that services "in managing the property of an estate" are "services that usually fall within the ordinary routine of administration and for which no extra compensation is allowed." The exact nature of the services, however, to which the court was referring cannot be determined from the opinion in that case. *In Estate of Phelps*, 186 Cal. 292, 199 P. 10, the court characterized as the performance of the ordinary duties of an executor "the

leasing of the property, collection of rents due on the property and of interest due on claims owing to the estate, and the paying out of such moneys as were necessary for the completion of the administration." *Wise v. Cutchall*, 171 Okla. 60, 41 P. (2d) 864, cites the California case to a similar statement. *Dallas Joint-Stock Land Bank in Dallas v. Maxey*, (Tex. Civ. App.) 112 S. W. (2d) 305, holds that no extra compensation should be allowed to an administrator who "was officially engaged only in the ordinary and normal duties incident to renting and managing certain heavily incumbered farm property." In *Pearce, Executor v. Smith, Administratrix*, 38 Ga. App. 413, 144 S. E. 43, extra compensation for collecting rents from real estate was denied. And see, 3 Woerner, The American Law of Administration (3d ed.) 1819, § 529.

On the other hand, in *In re Wilson's Estate*, 83 Neb. 252, 119 N. W. 522, the court held:

"As to the $2,775 claimed by plaintiff for extraordinary services rendered by him as a business man in securing tenants for the property, collecting rents, attending to repairs, securing insurance, hiring janitors, paying taxes, and looking after a heating plant used jointly by the estate and the First National Bank, we are of the opinion that some allowance may be made in the discretion of the court therefor."

There is a like decision in *Matter of Wolfe*, 4 Ohio N. P. 336. In *Byrd v. Phoenix Savings Bank & Trust Co.*, 62 Ariz. 474, 158 P. (2d) 657, it appeared that the estate had been kept open for thirteen years and an allowance for extraordinary services was made to the executor for services which included, among other things, the collection of rentals, the payment of taxes, and looking after insurance. The court, in refusing to

interfere with the exercise of discretion by the Probate Judge, took into consideration the length of time that the estate was open, and said "that extraordinary services were rendered in this case by reason of the duration of the probate proceedings and the great amount of extra work that was entailed."

■ In the cases cited, where the claim for extra compensation was denied, it is difficult to determine whether or not the services were comparable to those rendered by the executor in the present case. The services here embraced a good deal more than the mere collection of rents. They constituted in a real sense the management of a business property with all that the word implies. A different question would have been presented had the estate been closed at the end of one year, or thereabouts. But when, owing to litigation and other circumstances, it became necessary for the executor to render such services over a period of five and a half years, we think that the Probate Court might in its discretion find that they went beyond the ordinary routine duties of administration.

We are also of the opinion that it was within the court's discretion to fix the amount of the extra allowance at such a percentage of the rents collected as, added to the statutory commission, would give the executor the same rate of compensation as is usually paid for property management services in the City of Portland.

### 4. ATTORNEY'S FEES

■ The total fee allowed Mr. Middleton for his services as attorney for the executor was $1,408.76. This amount includes $500.00 for his services in the case of United States National Bank of Portland v. Allen, supra, which we have already approved. The balance,

$908.76, or the equivalent of the executor's statutory compensation, was for the attorney's ordinary services. The appellants objected to this allowance on the ground that the attorney's fee should not exceed the executor's fee, which, under appellants' view, should have been based upon the appraised value of the estate. But, since, as we have held, the executor's statutory fee was fixed in accordance with the meaning of the statute, it follows that the objection is groundless, and was properly overruled.

The order and decree appealed from is affirmed.