264 P.2d 674

In re HILDEBRAND'S ESTATE.

MAYES v. MAYES.

No. 5655.

Supreme Court of New Mexico.

Dec. 8, 1953.

Seth & Montgomery, Santa Fe, for appellant.

Moses & Vaught, Albuquerque, for appellee.

COMPTON, Justice.

This is an appeal from an order approving the final report of Guy Mayes, adminis-

trator of the estate of E. E. Hildebrand, deceased, the proceeding having originated in the Probate Court. E. E. Hildebrand died on the 3rd day of May, 1937, and at the time was a resident of the State of Texas. He left a last will and testament by the provision of which Eva Dycus of Archer County, Texas, and appellant, Lucy Mayes, were sole devisees of his estate to the extent of an undivided one-half interest each. Eva Dycus and her husband, Harold Dycus, were named executors therein. The deceased was engaged in the ranching business and left property in Texas and New Mexico. Soon after his death, the devisees entered into an agreement whereby Eva Dycus took the Texas property, and Lucy Mayes took that part of the estate located in New Mexico as her share. The executors did not qualify in New Mexico, and upon petition of Lucy Mayes, Guy Mayes was appointed ancillary administrator on July 6, 1937. An inventory was timely filed showing that the deceased left 817.44 acres of land in New Mexico of the value of $2,452.32. Subsequently, a supplemental inventory was made covering other real estate of the value of $680. His estate in New Mexico presumably consisted of real estate only, of the total value of $3,132.32.

The final report that is now being attacked was filed February 20, 1950. The assets, consisting of the ranch which had been considerably augmented by the purchase of other lands, previously had been sold for a consideration of $18,000, one-half of which was claimed by appellee. Appellee asserts in his final report that he and the deceased were partners in the ranching business in New Mexico on an equal basis; that Lucy Mayes knew of such partnership and that after the death of Hildebrand, he and Lucy Mayes agreed that the partnership should be continued by them on the same basis. As an alternative, appellee contends that as manager he furnished money, supplies and personal services in the operation of the ranch and should the court hold that he was not entitled to participate in the assets equally as a partner, that he be allowed a reasonable administrator fee, which fee should include the value of his services, supplies, money advanced and equipment furnished by him in its operation. Lucy Mayes objected to the final report. She denies the existence of the alleged partnerships and prays that the final report be disapproved.

The cause was tried to the court and from an order approving the final account, Lucy Mayes appeals.

The findings material to a decision are:

"5. That Moses and Vaught are entitled to a fee in the sum of $1,500.00, to be paid from the assets of said estate for services rendered as attorneys for the ancillary administrator of said estate.

"6. That E. E. Hildebrand and Guy Mayes during the lifetime of E. E. Hildebrand were engaged as partners in various ranching operations in New Mexico and Texas from time to time. Subsequent to the death of E. E. Hildebrand said Guy Mayes went to Texas to confer with Mrs. Eva Dycus, who was his heir there, regarding payment to him of monies due him in connection with said partnership, but a satisfactory solution was not reached.

"7. That thereafter the said Guy Mayes and Mrs. Lucy Mayes, his mother, agreed that the said Guy Mayes should go to Texas with a proposal that all of the assets of the estate of E. E. Hildebrand in the State of Texas should be received by Mrs. Eva Dycus and that all of the assets of the estate of E. E. Hildebrand in the State of New Mexico should be received by Mrs. Lucy Mayes, his other heir.

"8. That at such time the said Guy Mayes and Mrs. Lucy Mayes, his mother, agreed that the two of them would continue the operation of the ranch property in Valencia County, New Mexico as co-partners.

"11. That during the operation of the ranch in Valencia County said Guy Mayes during the term of such operation advanced funds from his personal estate for the benefit of such operation of this estate.

"12. That the said Guy Mayes as ancillary administrator, performed extraordinary services for the benefit of said estate over and beyond services required of him as such ancillary administrator.

"13. The ancillary administrator is entitled to a fee in the amount of $6,000.00 for services as such and for money advanced in connection with the operation of said ranch prior to the sale."

We are governed by the substantial evidence rule. The evidence may be summarized as follows: The deceased, Guy Mayes and a Mr. Bratt, in 1934, first entered into a partnership to engage in ranching operations on an equal basis. Their first undertaking was in Torrance County at Red Canyon Ranch. They then bought and operated a ranch in Archer County, Texas, known as Luke Wilson Ranch. This venture proved to be successful. Subsequently, they sold the Wilson Ranch for a net profit of $2,800 to each of the partners. Bratt received his share and thereafter ceased to be a partner. Hildebrand retained appellee's share from the sale for further investments in a partnership to be operated solely by him and appellee. Thereafter, appellee, Bratt and Bratt's son formed a partnership and operated the Faulkner Ranch in San

Miguel County. This undertaking also was successful and the parties realized a net profit of $1,776 each. At the suggestion of Hildebrand, appellee's share was sent to him for investment in the Hildebrand-Mayes partnership. It was about this time Hildebrand became interested in purchasing a ranch in New Mexico which resulted in his acquiring the Henry Elkins Ranch, and later the Harmon Ranch, being the ranches which were subsequently operated by appellee and Lucy Mayes.

Upon the death of Hildebrand, appellee immediately contacted Harold Dycus, one of the executors, concerning the money he had put into the partnership. He was informed by Dycus that there were no funds available and suggested that he should look to the New Mexico property as his money had been invested in it. This fact was communicated to Lucy Mayes, and it was agreed that they would continue to operate the ranch as co-partners on the same basis. Following a division of the property, appellant put approximately 190 head of cattle on the ranch. Appellee took charge of the ranch, stocked it with some 40 head of cattle and horses of his own, supplied various articles of ranch equipment, and managed it until it was sold in 1947. He devoted full time to it in 1939, 1940, 1942 and first half of 1943. At other times he was employed elsewhere and went to the ranch on week-ends and holidays. His salary in amount of $4,000 also went into the operation of the ranch. During his management, ranch holdings were materially extended by purchasing additional lands. It seems Hildebrand was engaged in other partnerships in New Mexico. It later came to the attention of appellee that Elkins was due the estate some $7,000. Likewise, I. K. Westbrook was due the estate approximately $7,000, which amounts, obviously, were unknown at the time of appellee's appointment. These amounts were collected by appellee and invested in the purchase of additional lands, and the balance used in ranch operations. Subsequently, in 1945, the ranch was sold for $18,000, and partnership activity closed. It was at this point appellant claimed all the proceeds from the sale.

The findings are somewhat uncertain and we have reviewed the record for a clarification. It seems the trial court was of the opinion that a ranching partnership, on an equal basis, existed between appellee and appellant; nevertheless, in order to place the parties in status quo as near as possible, limited appellee's compensation to administrator's fees and for money advanced in the operation of the ranch. There is ample evidence to support a finding as to the existence of a partnership. But appellee did not insist on this, obviously preferring to be reimbursed for funds advanced, a sum much less than a partnership share, than pursue the matter further. The relation of the parties makes his position understandable.

The trial court made a lump sum award of $6,000 as administrator's fees and for money advanced in the operation of the ranch. Error is claimed because the court did not specify the exact amount allowed as fees and the amount advanced. It would have been helpful had he done so. The record, however, discloses that the trial court was not requested to make such a determination; hence, failure to make definite findings in this regard, cannot be urged as error.

Appellant further asserts that § 33–1001, 1941 Comp., which provides no compensation shall be allowed to administrators on account of real estate, was in effect at the time of the commencement of the action, consequently, the administrator is not entitled to compensation. Conversely, appellee contends that his compensation is controlled by the amendment thereto, Ch. 124, L.1947, which provides for the allowance of compensation on account of real estate upon proper cause being shown therefor. We find a division of authorities on the question. Some hold to the view that the compensation of a personal representative is governed by the law in effect at the time of rendition of his services; others by the law in force at the time of his appointment; and still others by the law in effect at the time of the settlement of his account and making the order allowing the award. Scroggins v. Osborn Co., 181 Ark. 424, 26 S.W.2d 95; In re Hansen's Estate, 50 Nev.

15, 248 P. 891; Gaines v. Reutch, 64 Md. 517, 2 A. 913; In re Dewar's Estate, 10 Mont. 426, 25 P. 1026; In re Spires' Estate, 126 Cal.App. 174, 14 P.2d 340; In re Estate of Donovan, 266 Mich. 362, 253 N.W. 552, 91 A.L.R. 1418; In re Estate of Feehely, 182 Or. 246, 187 P.2d 156, 173 A.L.R. 1334. We are in accord with the latter view. Logically, a representative is entitled to compensation only when he has finished the duties imposed upon him. It is then the court can fully evaluate his services.

It is further contended that Art. 4, § 34 of our Constitution prohibits the use of Ch. 124, § 1 of the Laws of 1947, § 33–1001, 1941 . Comp., in determining the amount of administrators' fees. We do not believe this constitutional provision to be applicable to the instant case in view of the decided cases in this jurisdiction with particular reference to Stockard v. Hamilton, 1919, 25 N.M. 240, 180 P. 294, which case discusses the basic purpose of this constitutional provision. The cases of Kreigh v. State Bank of Alamogordo, 37 N.M. 360, 23 P.2d 1085; In re Martinez' Will, 47 N. M. 6, 132 P.2d 422; Heron v. Gaylor, 53 N.M. 44, 201 P.2d 366, are also persuasive of the conclusion we announce. Further, the only case cited by appellant in support of this contention favors strongly the position of appellee; the holding is summarized in the second headnote, as follows: In re Spires' Estate, 1932, 126 Cal.App. 174, 14 P.2d 340:

784

"Amount of compensation allowable to executors for extraordinary services in administration of estate held governed by law in force at time of allowance (Code Civ.Proc. § 1618)."

We think an award of compensation on account of the real estate, was warranted. Appellee brought into the estate the Elkins and Westbrook Notes. He contributed thereto of his personal funds approximately $8,000. He devoted much time to it. Litigation, involving water rights for the ranch, was successfully conducted by him. Finally, he sold the ranch at a nice profit, thereby saving the estate the customary brokerage commission. These are more than the ordinary services required of an administrator. For cases dealing with compensation for extraordinary services by administrators, see In re Estate of Feehely, supra; 2 Bancroft Probate Practice, 2d Edition, § 420 and 173 A.L.R. p. 1334 where the cases are collected.

Objection is raised here that the final report is not in proper form. Appellant did not invoke a ruling of the trial court, therefore, it cannot be raised here; nevertheless, from a reading of the record, we are convinced that all parties necessary for a proper determination, were before the court.

It is strongly insisted that attorney fees are excessive. The fixing of fees is a question addressed to the sound discretion of the trial court and its award will not be disturbed in the absence of a showing of abuse. Ordinarily, in conducting probate proceeding, attorney fees are the same as those allowed to administrators and executors. Here again, however, the court may fix a different fee upon a proper showing. § 33–1004, 1941 Comp. The estate was held open due to the partnership agreement for some 12 or 13 years. Many complicated and technical legal problems arose requiring the time and attention of appellee's attorneys. Titles were to be cleared and other related suits filed. Tax matters were handled locally and before the State Tax Commission in Santa Fe. These called for numerous expensive trips. On one occasion, it appears the attorneys made a saving of $2,000 to the estate in a single tax adjustment. In view of the long continuous services, the fee fixed by the court is reasonable.

We are requested to allow a fee, in addition to the amount fixed by the lower court, for the services of his attorneys in representing him on appeal. For their services here, an allowance of $250 is hereby granted.

The judgment will be affirmed, and it is so ordered.

SADLER, C. J., and LUJAN and SEYMOUR, JJ., concur.

McGHEE, J., not participating.